102 So.2d 578 (1957)
Edelmira CHACON, Henry Longval and Pressley McFadden, Appellants,
v.
STATE of florida, appellee.
Supreme Court of Florida, Special Division A.
June 19, 1957.
On Rehearing April 16, 1958.
*579 William T. Fussell, John A.R. Grimaldi, and Frank Regano, Tampa, for appellants.
Richard W. Ervin, Atty. Gen., and David U. Tumin, Asst. Atty. Gen., for appellee.
WELCH, Associate Justice.
There is little dispute, if any, between the parties as to the facts shown by the record in this case, which are substantially as follows:
An information was filed on the 19th day of November, 1954, in Four Counts, charging appellants with violating the State Lottery Statutes, F.S.A. § 849.01 et seq. The First Count charged that they did unlawfully aid and assist in the setting up, promoting or conducting of a lottery for money; the Second Count charged that they did unlawfully have in their possession certain tickets in a lottery for money; the Third Count charged that they did unlawfully have in their possession certain implements and devices for conducting a lottery; the Fourth Count charged that they did unlawfully sell or offer for sale shares and interests in a lottery for money.
Thereafter, on the 4th day of February, 1955, the appellant, Edelmira Chacon, filed a Pre-Trial sworn Motion to Quash a Search Warrant, suppress evidence obtained thereunder and return of property illegally taken (R. 105); on February 4, 1955, the appellant, Henry Longval, filed a Pre-Trial sworn Motion to Suppress Evidence obtained under illegal arrest and return of property illegally taken (R. 11-13) and Motion for Severance (R. 14-15), and these Motions were denied (R. 105-106); and on February 4, 1955, the appellant, Pressley McFadden, filed a Pre-Trial sworn Motion to Suppress Evidence obtained under illegal arrest and return of property illegally taken (R. 16-18) and Motion for Severance (R. 19-20) and these Motions were denied (R. 106). On February 10, 1955, in advance of trial, the aforesaid Motions were heard and the Arresting Officers testified at length and the Judge presiding at the hearing denied said Motions, as aforesaid (R. 105-106).
Thereafter, on March 3, 1955, the appellants, having entered a plea of not guilty, the case came on for trial before a Jury and the presiding Judge (R. 107); during the progress of said trial the evidence which had been seized by the Arresting Officers, and which appellants had filed Motions to Suppress, was offered in evidence, to the introduction of which appellants duly objected, but all of said objections were over-ruled by the Trial Judge, and all of said exhibits were admitted in evidence over said objections by the Trial Judge, as follows:
"Yes. Now all of the evidence is admissible, all of the exhibits are admissible against all defendants under Counts 1 and 3. Exhibit 8 is inadmissible against McFadden, is against Longval. I had better put it this way: That the only Bolita Ticket Exhibits which are admissible against Longval *580 are those embraced in Exhibit 8, if any; and the only ones admissible against McFadden under the Second Count are those if any, embraced in Exhibit 9. Now, the Fourth Count, the same thing will be true as to Exhibits 8 and 9, respectively, on Longval and McFadden. Everything is admissible against Chacon on every count." (R. 266)
Thereafter, at the conclusion of the testimony on behalf of the State, all of the defendants duly moved the Court for a directed verdict of not guilty as to all the defendants on all counts, which Motion the Court denied (R. 267); thereafter, on March 3, 1955, the Jury returned with verdicts finding the Defendant, Edelmira Chacon, guilty as charged in the Information; the defendants, Henry Longval and Pressley McFadden, guilty as charged in the First, Third and Fourth Counts of the of the Information; the Court, on oral Motion of appellants did, on March 3, 1955, enter an Order extending the time for filing Motion for New Trial (R. 286); thereafter, the appellants, on March 11, 1955, and within the time fixed by said Special Order, did file their separate Motion for a new trial (R. 290-291); thereafter, the Court did on March 28, 1955, enter an Order over-ruling and denying all the said Motions for New Trial (R. 293); thereafter, the Court did impose Final Judgment and Sentence.
On April 11, 1955, the appellants filed their Notice of Appeal to the Supreme Court (R. 296) and on April 17, 1956, within the time fixed by Special Order, the defendants filed their separate Assignments of Error and grounds for Appeal (R. 297-305), and on April 17, 1956, the defendants filed their written directions to the Clerk (R. 306-307), thereby perfecting their Appeal to this Court.
At a hearing on the Motion to Suppress and Motion to Severance held on February 10, 1955, before the presiding Judge of the lower Court, the witnesses, Clinton Burgess, Ellis Clifton and Malcolm Beard, all Deputy Sheriffs of Hillsborough County, Florida, testified that on November 13, 1955, the said Officers, armed with a Search Warrant (R. 287) entered that certain dwelling house located at 948 11th Avenue, Tampa, Hillsborough County, Florida, and searched the said dwelling house for lottery law violation. That while searching the said dwelling house the witness, Clinton Burgess, testified that he found an Adding Machine, introduced in evidence as State's Exhibit No. 3 (R. 118) in the bedroom of Edelmira Chacon; assorted papers, introduced in evidence as State's Exhibit No. 4 (R. 120), on the bed of the defendant, Edelmira Chacon; yellow and pink pads, introduced in evidence as State's Exhibit No. 5 (R. 121) in the bedroom of Edelmira Chacon; Adding Machine paper rolls introduced in evidence as State's Exhibit No. 6 (R. 122), and two slips of yellow paper introduced in evidence as State's Exhibit No. 10 (R. 110) in the bedroom of Edelmira Chacon. The witness, Ellis Clifton, testified that while the search was in progress the Telephone in the dwelling house rang and various unknown persons called in lottery bets and that a person unknown to him and identified only as "Joe" called and said on one occasion that "Henry was coming over" and that on another incoming call, he recognized the same voice that told him that "he" (caller) "was sending a new boy by to pick up the stuff." That after these Telephone conversations, a White man walked up to the house and was invited in by Ellis Clifton and while Ellis Clifton was talking to him at the front door, Malcolm Beard, who had not heard the conversation between Ellis Clifton and the White man, came up and arrested the White man who had just come to the door. This White man was identified as being Henry Longval. All three of the Officers testified that they had never seen or heard of Henry Longval prior to his walking up to the house. After the arrest of Henry Longval, a Colored man walked up to the front porch of the dwelling house, while the *581 search was still in progress, and he was invited into the house by Ellis Clifton. The aforesaid Colored man was identified as the defendant, Pressley McFadden. Immediately after Pressley McFadden was invited into the house, he was engaged in a very short conversation with Ellis Clifton. Malcolm Beard, who had not overheard the conversation, but had been standing in the hallway watching Pressley McFadden walk up the front walk, into the house and speak to Ellis Clifton, arrested the said Pressley McFadden and took him into the kitchen where he was searched and alleged Bolita Tickets found on him, were introduced in evidence as State's Exhibit No. 9.
Appellants pose many questions on this Appeal. Question number One, is as follows:
"Do the following allegations of the Affidavit for Search Warrant meet and comply with the necessary legal requirements of probable cause for the issuance of a valid Search Warrant for a dwelling house?
"That the Affiant, on October 30, 1954, in the dwelling of Ross Anderson, Deputy Sheriff of Hillsborough County, Florida, personally observed a confidential informant dial a certain Telephone number, to wit: 25-4251, said Telephone number being the same number listed in the August, 1954, issue of the Telephone Directory for Tampa, Florida, under the name of Ursina Gonzalez, of 948 11th Avenue, Tampa, and thereupon, while listening on an extension of said Telephone, Affiant heard said confidential informant talk to a woman and purchase from said woman over the Telephone an interest in a lottery, commonly known as Bolita or Cuba, and that Affiant believes and has reason to believe that unlawful gambling and a lottery for money are actually being operated within said building."
This Court held in Cooper v. State, 106 Fla. 254, 143 So. 217, that an Affidavit for a liquor Search Warrant not stating facts on which Affiant's belief was based, and where Affidavit recited, in substance, that belief of Affiant was based on information furnished Affiant by parties who had knowledge of sale and possession of liquor and whom Affiant believed to be truthful and reliable, but there was no statement of any fact on which Affiant's belief was based and nothing on which Affiant could be held accountable for false swearing or perjury was insufficient. Also that persons making Affidavit for liquor Search Warrant must set forth facts on which belief is based, so that Affiant may be held responsible for falsity thereof and where Affidavit constituting basis for liquor Search Warrant was insufficient, evidence procured thereunder was inadmissible. In the body of the opinion in that case, 143 So. at page 217, this Court took occasion to say that Section 22 of the Declaration of Rights was not placed in the organic law of this State as an idle gesture; and at page 218 of 143 So., said, in reference to the Affidavit upon which the Search Warrant in that case issued,
"The affidavit upon which the search warrant issued in this case does not meet the requirements of the statute."
Here the attempted compliance with this portion of the Statute was in the following language "that the aforesaid belief of Affiant is based upon the following facts; upon information furnished Affiant by parties who had knowledge of such sale and possession and whom Affiant believes to be truthful and reliable." It will be observed that this language does not state any fact on which such reason or belief is based, but is "equivalent only to an allegation Affiant has reason to believe and does believe, on information and belief." There is no allegation in this Affidavit on which Affiant could be held accountable for false swearing or perjury. Neither is there any allegation of fact which may be traversed. If an Affidavit of this sort may be held to be sufficient basis for the issuance of a Search Warrant authorizing the search of *582 a dwelling, then those provisions of the Constitution, both State and Federal, above referred to, amount to nothing, and any man's home may be invaded at any time by designing and unscrupulous persons without the form of an Affidavit being filed, the falsity of which is susceptible to proof. We take it that the provisions quoted from Section 8518, C.G.L., F.S.A. § 933.18, supra, mean that the person making the Affidavit must therein swear that he, or she, has reason to believe that the dwelling is being used unlawfully, as stated in the Affidavit, and must then set forth specifically the facts upon which the reason or belief is based, and those facts must be so set forth that the existence or non-existence thereof may be made definite proof so that the Affiant may be held responsible for the truth or falsity of his statements in that regard.
We hold that the same rules of procedure that apply to liquor Search Warrants also apply to Bolita Search Warrants. In the case of De Lancy v. City of Miami, Fla., 43 So.2d 856, 14 A.L.R.2d 602, this Court cited the Cooper case supra, with approval. The first Headnote in the De Lancy case being as follows:
"Affidavits for search warrants showing that affiant placed his belief that gambling was being conducted in certain building upon what he had learned from investigation by someone whose name he did not disclose was insufficient."
In the case at bar we are dealing with a Search Warrant issued upon an Affidavit made by an Officer to the effect that he, the Officer, saw a confidential informer, whose name he did not disclose, dial a certain number on the Telephone and thereafter said Officer, while listening on an extension Telephone, heard said unknown person talk to another unknown person and purchase an interest in a lottery. The name of the confidential informer was never disclosed, neither the name or identity of the alleged unknown woman was disclosed. These statements of alleged "facts" are not set forth in such manner that the existence or non-existence of the same may be made a matter of definite proof so that the Affiant may be held responsible for the truth or falsity of his statements in that regard. The defendants in this cause could not traverse the allegations in the Affidavit for Search Warrant to the effect that the Deputy Sheriff heard a confidential informer carry on a conversation with an unknown and unidentified woman over the Telephone, for the simple reason that the name of the confidential informer was not disclosed, neither was the name and identity of the alleged unknown woman disclosed. These are not "facts" as would enable the defendants to test the truth or falsity thereof, or to hold the Affiant accountable in any manner, or to sustain a charge of perjury or false swearing against him.
In a recent case in the Supreme Court of the United States, Roviaro v. United States of America, 353 U.S. 53, 77 S.Ct. 623, 627, 1 L.Ed.2d 639, that Court, among other things, stated:
"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. * * * The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.
"The scope of the privilege is limited by its underlying purpose. * * *
"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, *583 is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication.
"Three recent cases in the Courts of Appeals have involved the identical problem raised here  the Government's right to withhold the identity of an informer who helped to set up the commission of the crime and who was present at its occurrence. * * * In each case it was stated that the identity of such an informer must be disclosed whenever the informer's testimony may be relevant and helpful to accused's defense."
In the case at bar the defendants had no way of knowing or discovering whether or not the testimony of the confidential informer or the unknown and unidentified woman would be relevant or helpful to their defense.
There are no allegations in this Affidavit stating facts that could be traversed; and undisclosed confidential informer carrying on a conversation over the Telephone with an unknown woman in which the informer claims to have purchased an interest in a lottery ticket is the basis upon which this Search Warrant was issued.
We hold that this does not comply with the requirements of law in reference to the issuance of Search Warrants, and therefore the Search Warrant was void; and the lower Court erred in denying the Motion to Suppress the evidence obtained thereunder.
The defendants question number VI, is as follows:
"In light of the evidence offered by the State, did the Trial Court err in failing to grant Defendants Henry Longval and Pressley McFadden's Motion for Directed Verdict and Motion for new trial which were based upon the grounds that the evidence adduced would not and did not sustain a verdict of conviction under the First, Third and Fourth Counts of the Information?"
The only evidence offered by the State against all defendants were the pieces of paper seized on their person, or in their possession, which were identified by a so-called expert as lottery tickets. There was never any testimony introduced to show the setting up of a lottery, the possession of implements and devices, or the sale of a share in a lottery by any of these defendants. The burden of proof rested upon the State to prove the charge contained in the Information that is, that the defendants did aid and assist in setting up, conducting or promoting, or were interested in, or were connected with a lottery in Hillsborough County, by evidence which would convince a Jury beyond a reasonable doubt that the charge was true and that the defendants were guilty. We hold that the evidence was insufficient and that the lower Court erred in not granting the Motion for a Directed Verdict.
The defendants question number VII, is as follows:
"Where a Deputy Sheriff while in a dwelling being searched by other Officers, arrested a person then unknown to him, who merely walks up to the front door of said dwelling house and answeres to the name of Henry, the sole and only basis for arresting such *584 person being that he was told by another Deputy while said dwelling was being searched by other Deputies, that Telephone calls were being received regarding alleged lottery bets from undesignated third person or persons, and on one of the Telephone calls an unknown person, who called himself Joe, said that `Henry would be over in a bit', and did not otherwise describe himself or say why Henry was going over there and that on other Telephone calls, an unknown person who called himself Joe had inquired about lottery bets, does such communication to the arresting Officer of such hearsay statements of such undisclosed third person or persons constitute reasonable ground justifying such Officer, to arrest without a Warrant of any kind under the power granted a Peace Officer in Section 901.15 Florida Statutes, 1953?"
The defendants question number VIII, is as follows:
"Where a Deputy Sheriff while in a dwelling being searched by other Officers, arrest a person then unknown to him who merely walks up to the front door of said dwelling house and states on being questioned by the Officer, that he is Pressley, that Joe sent him, the sole and only basis for arresting such person being that while other Officers were in the process of searching the dwelling house, Telephone calls were received by him regarding alleged lottery bets from undesignated person or persons and among them a call from an unknown person who called himself Joe, and who said that a new man was coming over to pick up the stuff and did not otherwise describe himself, and that on other Telephone calls an unknown person who called himself Joe had inquired about lottery bets, does such communication to the arresting Officer of such hearsay statements by said undisclosed person or persons constitute reasonable ground justifying such Officer to arrest without a Warrant of any kind under the power granted a Peace Officer in Section 901.15 Florida Statutes, 1953?"
Section 901.15, Florida Statutes 1953, F.S.A., sets out the circumstances under which a Peace Officer may arrest a person without a Warrant:
(1) When the person arrested has committed a felony or misdemeanor, or violated a Municipal Ordinance.
(2) When a felony has in fact been committed, and he has reasonable ground to believe that the person being arrested has committed it.
(3) When he has reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed it or is committing it.
(4) When a Warrant has been issued charging any criminal offense and has been placed in the hands of any Peace Officer for execution.
There is in the record in this cause no contention on the part of the State that the Officers who arrested these defendants had a Warrant for their arrest; there is nothing in the record to show that these defendants had committed any crime or offense in the presence of the Officers; there is nothing in this record to show that the Officer who made the arrest in this case had any knowledge that a felony had been committed and that the persons arrested had committed it; there is nothing in this record to show that the Officer who made the arrests had any knowledge that a felony was being committed and that the persons arrested were committing it; there is nothing in this record to show that a Warrant had been issued charging these defendants with any crime or offense, and placed in the hands of any Peace Officer for execution. The most that the record discloses is that Henry Longval and Pressley McFadden, separately and at different times, approached a house that was being searched for lottery law violations; that *585 they were each unknown to the Officer who made the arrest; that each of them, upon identifying themselves, one as Henry and the other as Pressley, were promptly placed under arrest by Officer Malcolm Beard, and who testified at the Pre-Trial Hearing on the Motion to Suppress, that "I tell you, anybody that would come to that house that morning and walk up on the front porch and in that hall I would have suspected." (R. 96-100). This whole record is permeated with testimony that shows that the defendants, Henry Longval and Pressley McFadden, were arrested by the Officer upon nothing more than a suspicion by the Officer that they were guilty of some crime.
We hold that the arrest in each instance was made by the Officer on suspicion that the defendants were guilty of some crime and that said arrests were unwarranted from the facts and circumstances known to the Officer at the time and were therefore unlawful arrests and that any evidence secured from the defendants after such unlawful arrest was inadmissible in evidence.
The defendants have posed many other questions on this Appeal, among which was the action of the lower Court in refusing to grant the Motion for Severance. If this case was to be reversed for a new trial this writer is of the opinion that a severance should be granted, upon timely Motion; but having reached the conclusion that the Search Warrant under which the dwelling was searched was void and that the arrests of Henry Longval and Pressley McFadden were unlawful arrests and that the evidence secured by the Officers making the search and making the arrests was inadmissible in evidence, we see no useful purpose in discussing the remaining questions posed by the appellants.
The case is reversed with directions to the lower Court to discharge the defendants.
Reversed.
TERRELL, C.J., and ROBERTS and O'CONNELL, JJ., concur.

On Rehearing
THORNAL, Justice.
Appellants Chacon, Longval and McFadden, who were defendants below, seek reversal of a judgment of conviction and sentence to terms in the state prison entered pursuant to a jury verdict finding them guilty of various charges of lottery law violations.
The matter is now before us on the State's petition for rehearing following the opinion of this Court filed June 19, 1957, reversing the judgment and directing the discharge of the appellants. We granted rehearing and the cause has been re-argued, this time before the Court en banc.
Although several questions have been raised and will be discussed, the principal points for determination are the legality of the search warrant to sustain the search and the legality of the arrest and subsequent search of appellants Longval and McFadden.
All three appellants were tried on an information charging them in four counts with violating state lottery statutes. The sum of the charges was as follows: first count, they did unlawfully aid and assist in the setting up, promoting or conducting a lottery for money; second count, they did unlawfully have in their possession certain tickets in a lottery for money; third count, they did unlawfully have in their possession certain implements and devices for conducting a lottery; fourth count, they did unlawfully sell or offer for sale shares and interests in a lottery for money. Appellant Chacon was convicted on all four counts. Appellants Longval and McFadden were convicted on counts one, two and four.
The facts are not in dispute. None of the defendants testified. On November 12, 1954, Clinton Burgess, a deputy sheriff of Hillsborough County, made an affidavit for a search warrant stating that he had reason to believe and did believe that a certain dwelling located at 948  11th Avenue, Tampa, Hillsborough County, Florida, occupied or under the control of one Ursina *586 Gonzalez, was being used as a gambling house. He stated as facts, tending to establish grounds for the warrant and probable cause to believe that the property was being so used, the following:
"That affiant, on October 30th, 1954, in the dwelling of Ross Anderson, Deputy Sheriff of Hillsborough County, Florida, personally observed a confidential informant dial a certain telephone number, "to-wit: 24-4251, said telephone number being the same number listed in the August, 1954, issue of the telephone directory for Tampa, Florida, under the name of Ursina Gonzalez, of 948  11th Avenue, and thereupon, while listening on an extension of said telephone, affiant heard said confidential informant talk to a woman and purchase from said woman over the telephone an interest in a lottery, commonly known as Bolita or Cuba, and that affiant believes and has reason to believe that unlawful gambling and a lottery for money are actually being operated within said building." (Emphasis added.)
On the basis of this affidavit the search warrant was issued by Honorable Henry C. Tillman, Circuit Judge. On November 13, 1954, armed with the search warrant which Judge Tillman issued, Deputy Burgess, accompanied by Deputies-sheriff Ellis Clifton and Malcolm Beard, proceeded to the dwelling of Ursina Gonzalez at the address stated in the warrant and there undertook to search the premises. The warrant was duly read to Mrs. Gonzalez as well as to her two daughters, one of whom was the appellant Edelmira Chacon. The building was the dwelling of Mrs. Gonzalez. It was occupied by herself, her husband, her two daughters and, apparently, some grandchildren. In a room described as the bedroom of Edelmira Chacon the officers found various sums of money, bolita and bond tickets, check pads, an adding machine, adding machine tape and a box containing assorted bolita pads, slips and books. In the bedroom of Ursina Gonzalez they found a notebook and several bolita slips in the wastebasket. While the search was in progress, the telephone, located between the two bedrooms in a hallway, rang repeatedly. Officer Clifton in each instance answered the phone. There were several calls from a man who identified himself as Joe. On the initial call Joe asked to speak to "Nooney." With Joe still on the line, Officer Clifton asked the appellant Chacon, "Who is Nooney?" She advised him that she was known as Nooney. Whereupon, the officer told Joe that Nooney was busy, which she was. Joe then made inquiry as to the number of three-dollar bets that Nooney had taken. The officer then inquired of Mrs. Chacon as to the number of three-dollar bets she had taken and she advised him to tell Joe that she didn't have any three-dollar bets. On another occasion Joe called and placed numerous bolita bets directly with the officer. There were various calls from people who identified themselves as Leo, Geneva and Benny. All of these people placed bolita bets with the officer. Obviously, law enforcement in Hillsborough County was enjoying a field day.
Among other telephone calls from Joe was one in the course of which he told Officer Clifton to tell Nooney that he was sending "Henry" to pick up the "stuff." Immediately after this call, Clifton had a conversation with Officer Beard who, incidentally, had listened in on one or more of the telephone calls. Shortly after the last call mentioned a man appeared at the front door of the house with an envelope in his hand. Clifton invited him in, asked him who he was, and he replied that he was Henry and that he had come to pick up the "stuff." Henry was then arrested by Deputy Beard, the envelope was opened and the contents revealed a sum of money and a number of bolita slips.
In another telephone call from Joe, he advised Officer Clifton to tell Nooney that he was sending a new boy over. Shortly after this call appellant McFadden presented himself at the front door. Officer *587 Clifton asked him who he was. He replied that he was Pressley. When asked for whom he worked, he responded that he worked for "Mr. Joe." Thereupon appellant Pressley McFadden was placed under arrest and searched. The contents of his pockets were equally as revealing as the contents of "Henry's envelope." The officers found various sums of money and numerous bolita slips on the person of appellant McFadden.
Sometime during the search appellant Chacon frankly admitted to the officers that she was operating the bolita business at the location in question for her brother Benny Frisco. Incidentally, it will be recalled that one of the telephone calls came from an individual who identified himself as "Benny."
Armed with all of this information including the incriminating evidence obtained in the searches, the County Solicitor informed against the appellants charging them with the various offenses against the lottery laws mentioned in the forepart of this opinion. Prior to the trial each of the three appellants made separate sworn motions to suppress the evidence obtained by the officers during the search. Appellant Chacon based her motion primarily on the contention that the search of the dwelling was illegal because of the alleged failure of the affidavit for the search warrant to set forth facts sufficient to lead a reasonable person to believe that the lottery laws were being violated. Appellants Longval and McFadden based their motions primarily on the contention that their arrest without a warrant was conducted without probable cause on the part of the officers to believe that a crime had been committed or was being committed. Therefore, they contend, since the arrest was illegal, the ensuing search following the arrest was illegal, hence, the product of the search could not be used as evidence against them
Likewise before the trial appellants Longval and McFadden made separate motions for a severance asserting that there were various inconsistencies between the defenses that would be offered by them and appellant Chacon and in addition that evidence which would be offered against Chacon would not be admissible against them, with alleged resultant confusion in the minds of the jury to the injury of these two appellants.
The State took issue on the motions. After an extensive pre-trial hearing, the trial judge denied all of the motions. The case came on for trial and resulted in a jury verdict finding appellant Chacon guilty on all four counts and appellants Longval and McFadden, respectively, guilty on counts one, two and four. Motions for a new trial were denied. The trial judge then adjudged appellants guilty in accord with the verdicts of the jury and sentenced them to terms in the state prison under count one. He withheld sentence from day to day and term to term under the other counts. Reversal of this judgment is sought by this appeal.
It is contended by appellant Chacon that the search of the dwelling was illegal because of the alleged inadequacy of the affidavit for the search warrant. It is contended by appellants Longval and McFadden that the search of their persons was illegal because of the alleged illegality of their arrest without a warrant. They also contend that error was committed in denying their motion for a severance. All of the appellants further contend that the evidence was insufficient to support the ultimate verdict of the jury.
The State, of course, takes the position that the search warrant was legally issued, that the search was legally conducted, that there were adequate reasons for the officers to believe that Longval and McFadden had committed crimes or were in the act of committing a crime and that hence their arrest without a warrant was legal thereby furnishing a valid basis for the subsequent search of these two appellants. The State also contends that the trial judge did not *588 abuse his discretion in denying the motions for a severance and that the evidence is more than adequate to sustain the ultimate jury verdict.
Another point at issue in the appeal is the question of the admissibility of the telephone conversations carried on by Deputy Sheriff Clifton with the various people who called during the course of the search. Appellants contend that these conversations constituted mere hearsay and were, therefore, not admissible against them. The trial judge ruled, and the State undertakes to support his ruling, that the conversations were admissible as a part of the res gestae. It is its position as will be pointed out hereafter that these conversations were merely "verbal facts" going to prove the ultimate fact that the place was being operated as a gambling establishment.
We think we should point out that we are not here confronted with the contention that evidence obtained in a search should be admitted at the trial regardless of the validity of the search. The State by its brief agrees with the appellants "that statutes authorizing searches and seizures must be strictly construed in the light of constitutional provisions and that evidence obtained as a result of an illegal search and seizure is inadmissible * * *." The point here made by the State is that the search was perfectly legal and was grounded on a valid search warrant, hence, the product of the search was legally admissible in evidence. On this point the line of cleavage between the appellants and the State results from the appellant Chacon's contention that the search warrant was invalid because it was based on an allegedly insufficient affidavit.
The appellants Longval and McFadden are not in a position to question the validity of the search warrant itself because they neither owned nor controlled the property described in the warrant. The record, as we shall see, reveals that they were merely a part of an organization that used the property as one of its operating locations. Consequently, the alleged illegality of the search could be of no material assistance to Longval and McFadden. Church v. State, 151 Fla. 24, 9 So.2d 164; Mixon v. State, Fla. 1951, 54 So.2d 190; 47 Am.Jur., Searches and Seizures, Sec. 11, p. 508.
We now return to the contention of appellant Chacon that the search warrant was invalid. We must analyze the affidavit and the warrant in the light of the requirements of Section 22 of the Declaration of Rights of the Florida Constitution, F.S.A., which reads as follows:
"The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches, shall not be violated and no warrants issued, but upon probable cause, supported by oath or affirmation, particularly describing the place or places to be searched and the person or persons, and thing or things to be seized."
Similar provisions are included in the Fourth Amendment to the Constitution of the United States.
In considering search and seizure problems we have applied the provisions of Section 22, supra, in the light of the requirements of Section 12, Declaration of Rights, Florida Constitution, which provides in part that no person shall "be deprived of life, liberty, or property, without due process of law". Reverting to the quoted provisions of Section 22, supra, it will be observed that the people are made secure only against "unreasonable seizures and searches". We have many times held that evidence obtained as the result of a search is inadmissible only if the search is "unreasonable." Weiner v. Kelly, Fla. 1955, 82 So.2d 155; Gaskins v. State, Fla. 1956, 89 So.2d 867; Brown v. State, Fla. 1956, 91 So.2d 175.
The question of "reasonableness" or "unreasonableness" is a judicial problem *589 in each instance to be resolved on the basis of the factual situation presented in each case. Every situation is to be tested by the traditional requirements of our judicial precedents as well as by the legislative enactments established to implement the requirements of the Constitution. State v. Simmons, Fla. 1956, 85 So.2d 879; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. The Florida Legislature has implemented our state constitutional provisions in various particulars. For example, by Section 933.19, Florida Statutes, F.S.A., our Legislature has made a part of the statute law of Florida the decision of the Supreme Court of the United States in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. By Section 933.19, supra, the Florida Legislature has specifically provided that "The same rules as to admissibility of evidence and liability of officers for illegal or unreasonable searches and seizures as were laid down in said case [Carroll v. United States, supra] by the Supreme Court of the United States shall apply to and govern the rights, duties and liabilities of officers and citizens in the State of Florida under the like provisions of the Florida constitution relating to searches and seizures." While Carroll v. United States, supra, dealt primarily with the validity of the search of a motor vehicle and announced various distinctions between what would be reasonable in the search of a vehicle and in the search of a dwelling, nonetheless, in the course of that opinion the Supreme Court of the United States likewise reaffirmed its previously announced rule that evidence obtained as a result of an "unreasonable" search whether of a dwelling or a vehicle is not admissible in the trial of a party who had been subjected to such unreasonable search. Our conclusion here reached is not to be construed as being at variance with that rule.
Further implementing the provisions of the Florida Constitution, the Legislature has enacted the other provisions of Chapter 933, Florida Statutes, F.S.A., governing the issuance and execution of search warrants. Among these provisions is Section 933.04, Florida Statutes, requiring an affidavit to support the issuance of a warrant. This section reads as follows:
"The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated and no search warrant shall be issued except upon probable cause, supported by oath or affirmation particularly describing the place to be searched and the person and thing to be seized."
Insofar as appellant Chacon is concerned it now becomes necessary to determine whether the affidavit in the instant case was adequate to support the subsequently issued search warrant. We think the affidavit here meets all of the requirements of the pronouncements of this Court in Perez v. State, Fla. 1955, 81 So.2d 201. It is the view of the majority of the Court that the instant case presents no substantial characteristics that would distinguish it from the rule of the Perez case. In Perez the substance of the affidavit was that a deputy sheriff saw an informer dial a telephone number listed in the identified telephone directory as being the number of the phone at a particular dwelling listed under the name of a particular individual. The deputy sheriff listened in on an extension while an informer called the number, asked for a woman named Teresa and placed a lottery bet in the course of the conversation. We there held that the act of hearing the bet made over the telephone constituted sufficient probable cause to justify the deputy in obtaining a search warrant.
In Perez v. State, supra, as in the instant case in some measure, the appellant contended that the information obtained by the deputy was not adequate to support the issuance of the warrant for the reason that such information could not have been used as admissible evidence at the trial of the cause. We disposed of that contention adversely to appellant in the Perez case. It *590 was there pointed out that a previously announced rule which required that the information obtained by an officer adequate to support probable cause for the issuance of a search warrant must be such as would be admissible at the trial of the cause, had been grounded on certain dicta announced by the Supreme Court of the United States in Grau v. United States, 287 U.S. 124, 53 S.Ct. 38, 77 L.Ed. 212. We specifically pointed out in Perez that the dicta in the Grau case had been thoroughly repudiated by the Supreme Court of the United States in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.
In the Perez decision we ourselves then proceeded to repudiate the rule of the Grau dicta. In order that the matter may be conclusively settled once and for all, we herewith announce again that the information forming the basis for a search warrant is not to be measured by its admissibility as evidence in the trial of the case. In other words, an officer may obtain information which would be adequate to support probable cause for the issuance of a search warrant even though if such information were subjected to the technical rules of evidence applicable to the trial of the cause, it would not be considered admissible.
Appellant Chacon, however, insists that the rule of Perez does not support the search warrant in the instant case. This is so, she says, because in Perez the affidavit identified the name of the person to whom the informer spoke in the telephone conversation, to-wit, "Teresa". We are referred to the affidavit in the instant case with the insistence that in this case the name of the woman to whom the informer spoke is not stated in the affidavit. Hence, contends appellant Chacon, the affidavit tenders to the accused no available opportunity to disprove the factual statements made by the deputy sheriff in the affidavit and thereby subject the affiant to a charge of false swearing or perjury. We think this contention without merit. Although the instant case might present a situation where it would be more difficult to prove the alleged falsity of the affidavit nontheless it could be proved if proof were available. The affidavit states that the call was made at the home of another deputy sheriff, Ross Anderson, that it was made to the phone number listed in the name of Ursina Gonzalez, that the informer spoke to a woman at that number and placed a bet in the course of the conversation. Assuming that the facts would support her, appellant could have assaulted the affidavit by showing that the deputy sheriff who made the affidavit was not in the home of the other deputy at the time he claimed the conversation took place or she could have shown that at that time there were no women in the home of Mrs. Gonzalez, or they could have identified the women who were there and had them state that no such telephone conversation occurred. We mention these possibilities merely to illustrate the proposition that the affidavit could have been made the subject of a contest as to its factual veracity if the appellant Chacon had in truth been in a factual position to contest it.
Appellant Chacon urges us to reverse her conviction on the authority of Gildrie v. State, 94 Fla. 134, 113 So. 704; Cooper v. State, 106 Fla. 254, 143 So. 217, and De Lancy v. City of Miami, Fla. 1950, 43 So.2d 856, 14 A.L.R.2d 602. We have examined the cited cases but find that they do not control the matter before us. In the cases relied upon by appellant the affidavits for the search warrants were grounded merely upon an alleged belief grounded on information and belief supplied by persons either unknown or unnamed. There was no statement of a specific fact upon which the law enforcement officer, out of his own personal experience, grounded his belief. By way of contrast in Johnson v. State, 157 Fla. 685, 27 So.2d 276, the affidavit was based on what the deputy sheriff actually saw. In the instant case, as in Perez v. State, supra, the affidavit stated a fact which the deputy sheriff himself heard. In *591 other words, the affiant in each instance reported specific facts which he had experienced with his own senses. In one instance his sense of sight; in this instance the sense of hearing. By analogy in Pegueno v. State, Fla. 1956, 85 So.2d 600, we sustained an arrest without a warrant based upon the officer's sense of smell, the testimony being that "fermented mash" had a distinct odor. We think that the cases relied upon by the appellant Chacon failed to support her contention that the affidavit for the search warrant was insufficient to support the issuance of the warrant and subsequent search. We are not here confronted with an affidavit based on information and belief. Illustrative of the rule covering affidavits on information and belief, see Davis v. State, 113 Fla. 713, 152 So. 6.
While admittedly the affidavit in this instance might have been made stronger, the fact remains that it meets the basic requirements of the Constitution and the implementing statute as well as our opinion in Perez v. State, supra. On this point, therefore, we hold that the search warrant was legally issued, that the search was legally conducted and that the evidence obtained as the result of the search was properly admissible in evidence against appellant Chacon. The trial judge so ruled and we hold that he ruled correctly.
We move next to the contention of the appellants that the telephone conversations carried on by Deputy Sheriff Clifton with the various individuals who placed bets during the progress of the raid were inadmissible as being afflicted with the vice of hearsay. The trial judge took the view that these telephone conversations were a part of the res gestae and on that basis constituted an exception to the prohibitive provisions of the hearsay rule. Regardless of the reason given by the judge for admitting the testimony into evidence before the jury, we find that his ultimate ruling was correct. Our research has led us to many cases which we hereafter mentioned which hold that telephone conversations of this nature conducted by a law enforcement officer in the course of a raid and at the place being raided are admissible as evidence of a "verbal fact" going to prove the nature of the illegal business being conducted in the establishment as distinguished from evidence of the truth of any alleged fact that might have been announced in the course of the conversation. In other words, to illustrate the point in the instant case, it was alleged that the dwelling was being conducted as a gambling establishment. The ultimate fact to be proved was just that. In the course of the raid the deputy sheriff received ten or more telephone calls from people who placed bolita bets. The fact to be proved was not particularly who called or the truth of any particular fact that might have been stated. The ultimate fact was that people did call, they did place bets and that this constituted evidence that the place was being used for gambling purposes. It is on this theory that such telephone conversations have been consistently allowed in evidence by many courts. In fact we have found none to the contrary. They are admitted on the theory that they do not fall within the comprehension of the hearsay rule. They are not merely "exceptions" to the rule. The so-called hearsay rule just isn't applicable. 20 Am.Jur. "Evidence", § 365, p. 333, and Sec. 668, p. 559; Commonwealth v. Jensky, 318 Mass. 350, 61 N.E.2d 532; Billeci v. United States, 87 U.S.App. D.C. 274, 184 F.2d 394, 24 A.L.R.2d 881; Courtney v. State, 187 Md. 1, 48 A.2d 430; Beard v. United States, 65 App.D.C. 231, 82 F.2d 837; State v. Tolisano, 136 Conn. 210, 70 A.2d 118, 13 A.L.R.2d 1405.
The point which we have last discussed is also involved in the contention of the appellants Longval and McFadden to the effect that there was no probable cause for the officers at the scene to believe that they had committed or were committing a *592 crime so as to justify their arrest and subsequent search without a warrant within the contemplation of Section 901.15, Florida Statutes, F.S.A. A reference to the cited statute will reveal that among other situations a peace officer may arrest a person without a warrant in cases where a felony has in fact been committed if he has reasonable ground to believe that the person being arrested has committed it, or when he has reasonable ground to believe that a felony has been or is being committed and he has reasonable grounds to believe that the person to be arrested has committed it or is committing it. Italiano v. State, 141 Fla. 249, 193 So. 48.
Under the first count of the information it is charged that all of the appellants "did unlawfully aid and assist in the setting up, promoting or conducting of a lottery for money, commonly known as Bolita and Cuba and Bond * * *" This describes an offense which constitutes a felony condemned by Section 849.09(1) (d), Florida Statutes, F.S.A. It is unnecessary to explore the information further as to other charges. It merely becomes necessary to determine whether the officers who arrested Longval and McFadden had reasonable grounds to believe that the described felony had been or was being committed and that they had reasonable grounds to believe that these two appellants had committed or were committing the felony. We think that this record is literally saturated with adequate evidence to constitute reasonable grounds for any responsible law enforcement officer to believe not only that these appellants had committed the crime but that at the time they appeared on the scene they were actually in the process of committing the crime condemned by the cited statute.
We have described in detail the setting out of which these arrests arose. Bolita tickets and implements for conducting a lottery were in evidence all over the place. In one of the telephone conversations Officer Clifton had been informed that "Henry" was coming by to pick up the stuff. Shortly thereafter the man who identified himself as "Henry" and who in fact was appellant Henry Longval appeared on the scene, said he was "Henry" and said he had come to pick up the "stuff." We have the view that the whole situation, including the composite information obtained collectively by the three officers making the raid, established thoroughly reasonable grounds for them to believe that Henry was part and parcel of the whole operation. Rogers v. State, 158 Fla. 582, 30 So.2d 625. See 4 Am.Jur., Arrest, § 48, p. 32. The same applies to appellant McFadden. In his case there was the additional fact that he came by to pick up some "stuff" and when he entered the front door he was interrogated as to the person for whom he worked and he identified his employer as "Mr. Joe" who in the mind of any reasonable man would immediately be identified as the "Joe" who had consistently favored the deputy sheriff with his telephone calls cataloging the whole operation as a gambling establishment.
Finding as we do that the arrest of these two appellants without a warrant was well within the law we merely apply the rule that the search following the arrest was perfectly legal and that the results of the search were properly allowed into evidence.
We consider briefly the contention that error was committed in the denial of the motions for a severance filed by appellants Longval and McFadden. We encounter no impediment to the conclusion that the trial judge acted well within the judicial discretion accorded to him by our own decisions beginning with Suarez v. State, 95 Fla. 42, 115 So. 519, and continuing through Manson v. State, Fla. 1956, 88 So.2d 272.
An examination of the record reveals that the judge here carefully instructed the jury with regard to the evidence that was allowed against each of the three appellants. *593 It appears to us that the procedural rights of all of the appellants were carefully guarded by the instructions of the judge. As a matter of fact it was perfectly obvious from this record that all of the appellants constituted integral parts of a well organized bolita operation. We do not find that the judge exceeded the bounds of a sound judicial discretion in denying the motions for severance.
We finally arrive at the contention that the judgment should be reversed because of alleged inadequacy of the evidence to sustain the verdict of the jury. Our study of this record leads us to the notion that the trial jury could not have correctly arrived at any verdict other than the one which they reached here. If any record can be said to be permeated with evidence of guilt of the parties charged, the record in this case is so conditioned. A thorough review of the entire proceeding impels us to the ultimate conclusion that these appellants had a fair trial, that they have been assisted throughout the proceeding by able counsel, that all requirements of due process have been met and that in the ultimate they have been found guilty by a jury of their peers. We think they can ask for no more. We, therefore, recede from the opinion in this matter filed June 19, 1957.
The judgment under assault is 
Affirmed.
TERRELL, C.J., and ROBERTS, DREW and O'CONNELL, JJ., concur.
WELCH, J., dissents.
WELCH, Justice (dissenting).
I dissent for the reasons set forth in the opinion which I prepared in this case, filed June 19, 1957, and respectively request that said opinion be considered as my dissenting opinion and published along with the majority opinion prepared by Mr. Justice THORNAL.