LEWIS, J.
This case is before the Court for review of the decision of the Third District Court of Appeal in State v. Moreno-Gonzalez, 18 So.3d 1180 (Fla. 3d DCA 2009). The district court expressly construed a provision of the Florida Constitution and, therefore, we have jurisdiction. See art. V, § 3(b)(3), Fla. Const. We approve the result, but not the reasoning, of the Third District Court of Appeal that under the specific circumstances of this case, the failure of a law enforcement officer to sign an affidavit in support of a search warrant did not invalidate the warrant. We disapprove the opinion below with regard to the constitutional analysis conducted by the Third District. Specifically, this case exclusively involves statutory law, and the Third District erred by addressing and applying the conformity clause of the Florida Constitution. The Fourth Amendment to the United States Constitution does not contain the same “affidavit” requirement which is utilized in the Florida Constitution.

FACTS AND PROCEDURAL HISTORY

On May 16, 2007, a circuit court judge issued a warrant authorizing the search of a property located at 22590 SW 252nd Street in Dade County. An affidavit was submitted by Miami-Dade Detective Lourdes Hernandez in support of the issuance of the warrant. The affidavit outlined the facts that led Detective Hernandez to believe that a marijuana hydroponic[1] lab was in operation on that property. While both Detective Hernandez and the circuit court judge initialed each and every page of the affidavit and the search warrant, the judge signed the affidavit and the warrant, and Detective Hernandez swore to the truth of each page of the affidavit in the presence of the circuit judge, Detective Hernandez failed to sign and subscribe to the affidavit on the line titled “AFFIANT.” A subsequent search revealed that hydroponic marijuana labs were being operated in a detached garage and a shed on the described property. Detective Hernandez impounded 47.6 pounds of marijuana that was discovered pursuant to the warrant.
The owner of the property, Alfredo Moreno-Gonzalez, was subsequently arrested and charged with possession of cannabis in an amount greater than twenty-five pounds, but less than 2000 pounds. On September 12, 2007, Moreno-Gonzalez filed a motion to suppress all evidence seized based upon the May 16, 2007, warrant. In support of the motion, Moreno-Gonzalez contended that: (1) the property was searched without a warrant; (2) the warrant that was later issued was insufficient because it was not supported by lawfully acquired probable cause; and (3) the affidavit in support of the warrant was not *1023 subscribed by the affiant, Detective Hernandez, as mandated by section 938.06, Florida Statutes (2007). On March 3, 2008, a hearing was conducted on the motion to suppress. The trial court granted the motion and ordered the evidence suppressed on the sole and exclusive basis that Detective Hernandez had failed to fully sign the affidavit on the line provided as required by section 933.06. The trial court then issued an order stating that due to the determination with regard to the statutory violation, no arguments arising under the Florida and United States Constitutions would be addressed.
Although the decision of the Third District Court of Appeal, which addressed the validity of the suppression order, provides “it is undisputed that probable cause was shown by the officer swearing to the allegations in the affidavit under oath before the judge,” Moreno-Gonzalez, 18 So.3d at 1180, a review of the suppression hearing transcript reveals to the contrary that there are, in fact, numerous factual discrepancies between the two witnesses who testified with regard to the events that led to the drafting of the search warrant. More specifically, the first witness, Detective Hernandez, explained that on May 16, 2007, the Miami-Dade Police Department was conducting investigations with the federal Drug Enforcement Administration (DEA) concerning “grow houses.” DEA Agent Pete Yates contacted Hernandez, stating that he received a tip about a “grow house” in the vicinity of 22590 SW 252nd Street. She and Agent Yates drove separate vehicles to the location named in the tip. According to Hernandez, the tip applied to a house located at 22600 SW 252nd Street. Hernandez stated that another Miami-Dade Detective named Silva had already approached the residence at 22600 SW 252nd Street with a DEA Agent, but no one responded. Detective Hernandez and Agent Yates then approached the residence of Moreno-Gonzalez, which was located at 22590 SW 252nd Street, as part of a neighborhood canvas to see if the residents could provide information with regard to the individuals who resided at 22600 SW 252nd Street.
As Detective Hernandez approached the front door, she observed that the home was under construction and the front door could not be opened. When she knocked on the door, a woman came to a side window and directed Hernandez and Agent Yates in Spanish to proceed to the rear of the house. As she was walking toward the back of the house, Detective Hernandez smelled a “very strong” odor of live marijuana emanating from a detached garage that was located just west of the primary residence. She noticed that PVC (a type of plastic) pipes entered the structure and that the windows of the building were covered with Mylar.[2] She also heard water pumps operating within the garage. Detective Hernandez testified that these conditions indicated to her that the garage served as a grow house. During cross-examination, Hernandez admitted that at that time she did not communicate her observations to Agent Yates.
Once she and Agent Yates entered the house through a screened-in porch and sliding glass door, Detective Hernandez informed the woman in Spanish that she was present to conduct a narcotics investigation. The woman stated that while she was only the housekeeper, the owner was at home and was sleeping. Detective Her *1024 nandez instructed the housekeeper to wake the owner because she and Agent Yates needed to speak with him. The housekeeper, accompanied by Agent Yates, proceeded to wake Moreno-Gonzalez and bring him to the kitchen. When Detective Hernandez asked Moreno-Gonzalez if he would consent to a search of the house, Moreno-Gonzalez refused. After the refusal, Detective Hernandez, Agent Yates, and Moreno-Gonzalez proceeded to the screened-in porch area. Hernandez contacted another Miami-Dade detective, who remained with Agent Yates and Moreno-Gonzalez while Hernandez left to draft the search warrant. When asked the time at which Moreno-Gonzalez refused consent, Detective Hernandez replied that it was approximately 9:30 or 10 a.m.
The testimony of DEA Agent Yates significantly differed from that of Detective Hernandez in a number of respects. The DEA report of the incident reflected that Agent Yates and Detective Hernandez approached the residence of Moreno-Gonzalez at 7:30 a.m. According to Yates, he intended to drive to 22600 SW 252nd Street; however, when he programmed the address into his GPS, it mistakenly directed him to Moreno-Gonzalez’s property. Agent Yates testified that he did not believe or intend that he, Detective Hernandez, and a third DEA Agent named Jones were going to 22590 SW 252nd Street as part of a canvas; instead, he thought they were at the correct house (i.e., the house named in the tip). Yates stated that he had not been advised that other law enforcement had already approached the house at 22600 SW 252nd Street, and Yates believed that he was the flrst person to arrive to investigate the grow-house tip.[3] According to Yates, when Hernandez knocked on the front door, a female opened the door. Yates did not recall that the front door was under construction. Yates stated that he did not speak Spanish and could not understand the conversation between the two women, but followed Detective Hernandez when she proceeded toward the back door of the residence. While walking to the back of the house, Agent Yates did not smell marijuana. He also testified that he did not recall seeing any PVC pipes near the garage.
After Moreno-Gonzalez spoke with Detective Hernandez in Spanish and refused consent for a search, Detective Hernandez, Moreno-Gonzalez, and Agent Yates proceeded to the screened-in porch area. During cross-examination, Yates stated that while he and Agent Jones remained with Moreno-Gonzalez at the house, Detective Hernandez stepped outside and walked to the garage. According to Yates, upon her return, Hernandez stated that “she smelled marijuana and then she kind of looked at the [detached garage] and could see that two of the windows were not boarded up, but had something, a covering on the inside, and PVC pipes coming out of the side of the building.” At that point, she advised that she intended to obtain a warrant.
The State appealed the suppression order, and the Third District Court of Appeal reversed the trial court. See State v. Moreno-Gonzalez, 18 So.3d 1180, 1185 (Fla. 3d DCA 2009). The district court relied on a portion of article I, section 12, *1025 of the Florida Constitution, which provides:
No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the kth Amendment to the United States Constitution, as interpreted by the United States Supreme Court.
Art. I, § 12, Fla. Const, (emphasis supplied). The Third District noted that the “conformity” sentence was added to the Florida Constitution after it was adopted by Florida voters during the 1982 election. See Moreno-Gonzalez, 18 So.3d at 1181.
The Third District then referenced the decision of the United States Supreme Court in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), in which the Supreme Court held that “[tjechnical requirements of elaborate specificity” are not proper with regard to affidavits in support of search warrants. Moreno-Gonzalez, 18 So.3d at 1183 (quoting Ventresca, 380 U.S. at 108, 85 S.Ct. 741). The district court concluded that the lack of a signature on an affidavit, where each page was initialed and the contents were sworn to under oath, constitutes a technical deficiency. See id. at 1184. Based upon this conclusion, the Third District held that the conformity clause of article I, section 12, mandates application of the holding in Ventresca to the present case. See id. at 1183. The Third District opined that to contend Ventresca is not binding on Florida courts after the approval of the 1982 amendment to the Florida Constitution “is to ignore the will of the people.” Id. Applying Ventresca, the Third District held that the absence of Detective Hernandez’s signature on the affidavit was not fatal to the validity of the search warrant, and that the trial court erred when it ordered suppression of the evidence on this basis. See id. at 1185.
The Third District also concluded that under Florida statutory law, the affidavit requirement of article I, section 12, can be satisfied by oath or affirmation. See id. at 1184. The district court noted that section 92.525, Florida Statutes (2007), provides, in relevant part:
(1) When it is authorized or required by law ... that a document be verified by a person, the verification may be accomplished in the following manner:
(a) Under oath or affirmation taken or administered before an officer authorized under s. 92.50 to administer oaths....
Id. The district court then stated that, under section 92.525, the definition of the term “document” includes affidavits. See id. at 1185 (quoting § 92.525(4)(b)). The Third District also reasoned that an oath may be administered by or before any judge of this state. See id. at 1185 (quoting § 92.50(1), Fla. Stat. (2007)). Based upon these statutory provisions, the Third District determined that “the affidavit at issue was sufficient to support the issuance of the warrant and the absence of a signature was not fatal.” Id.
On May 21, 2010, this Court accepted review of the decision below on the basis that the Third District Court of Appeal expressly construed a provision of the Florida Constitution. See art. V, § 3(b)(3), Fla. Const.

ANALYSIS

Although the Florida Constitution expressly provides that any search warrant must be supported by affidavit, see art. I, § 12, Fla. Const., the requirements for an affidavit in support of a search warrant are delineated in the Florida Statutes. This *1026 Court previously recognized that the Legislature is empowered to enact statutes to implement this constitutional provision:
The question of ‘reasonableness’ or ‘unreasonableness’ [of a search or seizure] is a judicial problem in each instance to be resolved on the basis of the factual situation presented in each case. Every situation is to be tested by the traditional requirements of our judicial precedents as well as by the legislative enactments established to implement the requirements of the Constitution.
Chacon v. State, 102 So.2d 578, 588-89 (Fla.1957) (emphasis supplied). The Court in Chacon specifically noted that implementing legislation had been adopted with regard to the issuance and execution of search warrants. See id. at 589. Accordingly, this case presents a question of statutory compliance — not a matter of constitutional construction.
Our conclusion is further compelled by the fact that the Fourth Amendment of the United States Constitution does not contain an affidavit requirement, but rather mandates that a search warrant be supported by “oath or affirmation.” Amend. IV, U.S. Const. Thus, the Florida Constitution not only has different requirements than the United States Constitution with regard to documentation in support of search warrants, but Florida statutory law provides further standards with which those affidavits must comply to be valid. For this reason, we are not required to follow United States Supreme Court decisions that address technical aspects of documentation in support of search warrants pursuant to the Fourth Amendment, even where those decisions discuss search warrants that are supported by affidavit, such as Ventresca. Therefore, to the extent that the Third District Court of Appeal relied upon the conformity clause in the Florida Constitution and held that the United States Supreme Court decision in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), compelled denial of the motion to suppress, we conclude that the analysis by the district court was erroneous and misdirected.
The statutes governing search warrants contain a section titled “Sworn application required before issuance” and provides:
The judge must, before issuing the warrant, have the application of some person for said warrant duly sworn to and subscribed, and may receive further testimony from witnesses or supporting affidavits, or depositions in writing, to support the application. The affidavit and further proof, if same be had or required, must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist.
§ 933.06, Fla. Stat. (2007) (emphasis supplied). “Subscribe” is the verb form of “subscription,” which is defined as “[t]he act of signing one’s name on a document; the signature so affixed.” Black’s Law Dictionary 1468 (8th ed. 2004). It is undisputed that Detective Hernandez failed to sign the affidavit in support of the search warrant that was issued. Therefore, the affidavit did not comply with section 933.06. However, whether this statutory violation is fatal to the warrant depends on a consideration of all the circumstances surrounding the omission.
The purpose of the requirement in the Florida Constitution that affidavits in support of search warrants be sworn to is to render law enforcement officers subject to charges of perjury for false statements that are offered under oath. See State v. Bernie, 472 So.2d 1243, 1248 (Fla. 2d DCA 1985) (“Police officers know that an oath requires the declarant to render himself punishable for perjury for any false state *1027 ments when he unequivocally attests to the truth of a statement. They know that such an act constitutes that oath-taking which is required by our statutes as well as our Federal and Florida Constitutions.”), approved, 524 So.2d 988 (Fla.1988).
Here, Detective Hernandez did swear to the truthfulness of all of her statements in the affidavit before the actual judge who signed the search warrant. Moreover, although Detective Hernandez failed to sign the affidavit on the line provided, both she and the judge who issued the search warrant initialed each and every page of the affidavit, including the page on which the signature line was located. During the hearing on the motion to suppress, Detective Hernandez testified that she swore to all of the information in the affidavit under oath before initialing each page. The trial court suppression order recognized and accepted that, according to Detective Hernandez, the entire affidavit was orally sworn to in the presence of the issuing judge. Thus, if false information was presented in the sworn affidavit, Detective Hernandez would be subject to a charge of perjury. See id.
Nothing in the record indicates that Detective Hernandez’s failure to sign the affidavit was anything more than, and it must be treated as, a simple accidental oversight. Indeed, Moreno-Gonzalez does not assert that Detective Hernandez attempted or intended to circumvent the statutory requirements for affidavits. Based on all of the undisputed circumstances surrounding the execution of the search warrant in this case, we conclude that while the lack of Detective Hernandez’s signature on the affidavit is most certainly a flaw, that flaw was not and should not be considered fatal to the validity of the search warrant.
In accepting the reasoning of the Second District, we emphasize that we do not condone careless mistakes by law enforcement officers, particularly with regard to search warrants. However, where all of the surrounding circumstances clearly and without dispute demonstrate that the entire written affidavit in support of the search warrant was initialed and sworn to under oath before the judge who issued the warrant, and there are no indications of unlawful or malicious conduct or intent on behalf of the police, a technical error such as occurred here should not and will not thwart the criminal justice process— especially where there is no indication that the defendant was prejudiced by the error. See, e.g., Cain v. State, 287 So.2d 69, 70 (Fla.1978) (approving decision of district court reversing a trial court order of suppression on the basis that the failure of the judge to fill in the date on a search warrant was “a mere technicality and not prejudicial”); State v. McManus, 404 So.2d 757, 758 (Fla. 4th DCA 1981) (upholding a circuit court order of interception, i.e., a wiretap, even though the application and affidavit in support of the order did not bear a jurat, a date, the signature of the issuing judge, or the seal of office), review denied, 412 So.2d 468 (Fla.1982).
Further, even if we were to conclude that the failure of Detective Hernandez to sign the affidavit under these circumstances constituted something more serious than a technical violation, application of section 92.525, Florida Statutes (2007), should preclude invalidation of the warrant for failure to comply with section 933.06. Section 92.525 provides:
When it is authorized or required by law, by rule of an administrative agency, or by rule or order of court that a document be verified by a person, the verification may be accomplished in the following manner:
*1028 (a) Under oath or affirmation taken or administered before an officer authorized under s. 92.50 to administer oaths; or
(b) By the signing of the written declaration prescribed in subsection (2).
§ 92.525(1), Fla. Stat. (2007). This statutory section also explains that “[t]he requirement that a document be verified means that the document must be signed or executed by a person and that the person must state under oath or affirm that the facts or matters stated or recited in the document are true, or words of that import or effect.” Id. § 92.525(4)(c) (emphasis supplied). This subsection expressly references affidavits as documents that are subject to this provision. See id. § 92.525(4)(b).
Under section 92.525, an affidavit need not be formally signed to comply with the Florida Statutes. Instead, the “subscription” requirement is satisfied if the drafter swears under oath before a judge, or other officer authorized pursuant to section 92.50, to the truth of the information contained therein. See § 92.50(1), Fla. Stat. (2007) (“Oaths ... required or authorized under the laws of this state ... may be taken or administered by or before any judge, clerk, or deputy clerk of any court of record within this state” (emphasis supplied)). As previously discussed, Detective Hernandez swore under oath to the truth of the entire affidavit before the actual judge who issued the search warrant and initialed each page, thereby validating the affidavit pursuant to section 92.525(1)(a).
CONCLUSION
Based on the foregoing, we approve the Third District’s reversal of the order of suppression, but disapprove the constitutional analysis and application employed by the district court. Instead, we hold the failure of Detective Hernandez to sign the affidavit did not render the search warrant invalid because, based upon all the circumstances surrounding the issuance of the warrant here, the error constituted a technical flaw. Accordingly, the trial court erred by suppressing the evidence exclusively on that basis.
For purposes of remand, we note that noncompliance with section 933.06 was not the sole basis for the motion to suppress. Rather, Moreno-Gonzalez contended that his property was searched without a warrant and also that the warrant which was later issued was insufficient because it was not supported by lawfully acquired probable cause. During the motion to suppress, the trial court allowed argument only on the statutory challenge, and the order granting suppression addressed only the statutory claim.
The testimony of Detective Hernandez and DEA Agent Yates differed significantly. Accordingly, the assertion of the Third District that “it is undisputed that probable cause was shown by the officer swearing to the allegations in the affidavit,” Moreno-Gonzalez, 18 So.3d at 1180, is contrary to the record. Therefore, we reject this conclusion. Upon remand, the trial court shall consider the evidence and the credibility of the witnesses who testified during the hearing on the motion to suppress and make further findings and conclusions as proper to fully determine whether suppression of evidence is warranted in this case based on any other ground presented.
It is so ordered.
PARIENTE, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., concurs in result.

. Hydroponics is "the science of growing plants in chemicals and water without the use of soil.” S-C Industries v. American Hydroponics System, Inc., 468 F.2d 852, 853 n. 1 (5th Cir.1972).

. The suppression hearing transcript uses the term "milark.” However, websites and weblogs that address marijuana grow rooms discuss the use of Mylar for its reflective properties. See, e.g., http://www.marijuana seedbanks.com/growing_marijuana_in-doors.html (last visited June 27, 2011).

. According to the suppression hearing transcript, the deposition of Miami-Dade Detective Silva was part of the trial court record (however, it was not included in the record on appeal). In that deposition, Silva stated that law enforcement agents approached Moreno-Gonzalez’s property first. Thus, this deposition directly contradicts the testimony of Detective Hernandez that Silva visited the house located at 22600 SW 252nd Street before Hernandez and Yates approached the residence of Moreno-Gonzalez.