SAM ITALIANO AND JOE ITALIANO v. STATE.

193 So. 48
Division A
Opinion Filed January 5, 1940
Rehearing Denied January 26, 1940

250

*McKay, Macfarlane, Jackson & Ferguson,* for Plaintiffs in Error;

*George Couper Gibbs,* Attorney General, and *Thomas J. Ellis,* Assistant Attorney General, for Defendant in Error.

THOMAS, J.—The plaintiff in error, Joe Italiano, was convicted of maintaining a gaming house and conducting a lottery "known as Cuba bolita" as charged in the first and second counts of the information, respectively. The jury having designated in their verdict that guilt had been proven under these charges the effect was to find this defendant

not guilty under the third count which charged operation of a lottery "known as New York bond." The plaintiff in error, Sam Italiano, was found guilty under all counts of the information.

It is stated by plaintiffs in error that two questions are involved in the appeal, first, the legality of the search of Joe Italiano and the competency of testimony obtained from him following his arrest without warrant; second, the propriety of the action of the judge in refusing to withdraw the trial jury, thereby allowing them to hear the arresting officer's testimony offered to show his authority for arresting without a warrant, hence, the admissibility of the evidence he obtained pursuant to his apprehension of Joe Italiano.

Taking the questions up in their order we must first decide whether this particular defendant's rights guaranteed him under Sections 12 and 22 of the Declaration of Rights of the Constitution of the State of Florida, have been violated.

Substance of Section 22 of our Declaration of Rights, which resembles in its guaranties the Fourth Amendment to the Constitution of the United States, U. S. C. A., is that the people shall be secured in their persons against unreasonable searches and seizures and that warrants shall not issue but upon probable cause and supported by oath or affirmation describing with particularity the place to be searched and the things to be seized.

Gist of Section 12 of the Declaration of Rights, which is similar to the Fifth Amendment of the Constitution of the United States, U. S. C. A., so far as this case is concerned, is that no one can be forced to testify against himself in a criminal case.

The rule appears established in this State that search and seizure is not unreasonable if accomplished without a war-

rant but as an incident to lawful arrest. State v. Merritt, 86 Fla. 164, 99 South. Rep. 230, 235. It was there pointed out that where the law authorizes arrest without warrant a reasonable search and seizure may be made incident thereto and appropriate "to the reasonable requirements for making effective a lawful arrest."

The statute empowering officers to arrest without warrant, Section 8323, C. G. L. 1927, makes it the officer's duty to take into custody without warrant any one believed by him upon reasonable ground to have perpetrated a felony.

On this score then, if the officer believed that Joe Italiano had committed a felony and grounds for his conviction were reasonable, an incidental search would have been justified.

The testimony of the arresting officer, a constable, was that the plaintiffs in error were known to him as the operators for several years of Olympic Bar, situated in his district. He arrested them in their place of business. He had arranged with one of the witnesses to go to the Olympic Bar and buy "numbers" and the constable was to enter while he was making the purchase. Plaintiff in error, Joe Italiano, left the booths where testimony showed trading in bolito was done and crossed the room to the bar. As the officer entered he started from the bar to the back of the room with a book and pencil in his hand. He was then seen to give warning, or as the witness described it, "to Sh-h, Sh-h." Upon being told he was under arrest he was asked to produce the pad which the officer had seen him place in his pocket. At first he denied having it, then raised it from his pocket, then replaced it and finally surrendered it. A bill folder, containing a ticket, was also handed the officer.

What we have related developed from the direct examination. At this point counsel for defendant asked per-

mission to examine the witness and that the jury be withdrawn. This request was denied and the propriety of the court's ruling will be discussed later. Upon cross examination on the matter of the competency of the proffered evidence, the following facts appeared: The "pads" were taken against Joe Italiano's will after he was advised that he was under arrest and after the officer had seen him leave a booth with pencil and a pad in his hand. The witness was "* * * familiar with the way they sell bolita and bond, and the kind of pads they use, and what I saw I was convinced that he was selling numbers." He stated also that he knew that people were buying numbers in the place of plaintiffs in error, and that one of them was the witness Sawyer with whom he made the plan to which we have alluded.

The pad was filed in evidence over the objection of Joe Italiano. It is described in the record as being 2⅜ inches in width and 3¾ inches in length. There was also introduced over objection of the same defendant a sheet of paper of the same size with the following inscription:

> "A A J
> 78 - 10
> 71 - 10
> Cuba."

There were introduced immediately afterwards five additional pads, four of the same size, varied in color.

It has been said by this court, in Haile v. Gardner, 82 Fla. 355, 91 South. Rep. 376, that the validity of the search depends on the circumstances surrounding it. So if reasonably made after, or as an incident to, a lawful arrest objection to the introduction of testimony resulting from it will be unsuccessful.

We think a study of the analysis we have given of the arresting officer's testimony is quite convincing that he

believed a felony was being committed and that his belief was reasonable. He knew who operated the business and had managed it for several years. Sales of tickets in the forbidden "numbers" game had been reported to him by several persons, including one who had agreed to purchase some of them the very day of the arrest and, indeed, at a prearranged time as a prelude to the entry of the officer. The plaintiff in error was seen by him to approach a customer, pad and pencil in hand. He was observed giving warning as the officer approached. He placed the pad in his pocket. He removed it, at least partially, and put it back all in the officer's presence. The officer was familiar with the game and the paraphernalia used.

The pad eventually allowed in evidence was innocent enough in itself and, as is urged, it might have been useful to restaurateurs and others in lawful enterprises but in the atmosphere disclosed by this record it was telltale evidence of an unlawful business and significant of what the record clearly shows was in existence, a place where "bolita" and "bond" gambling were being conducted.

The facts in this case are sufficient to justify the action of the officer in making the arrest and the testimony obtained in the search became admissible. The search, itself, assuming the arrest to have been valid, does not appear to have violated any of the rules promulgated to preserve to individuals the rights made secure to them by the constitutional provisions we have quoted..

Aside from the pad taken from the person of plaintiff in error there was found a ticket with numbers thereon which, considered with the lucid description of the game given by the witnesses, strongly supported the State's theory that gaming was in process at the time of the arrest.

The situation here can hardly be said to be more favorable to the person searched than was the one discussed in

Ellis v. State, 92 Fla. 275, 109 South. Rep. 622. See also Cortes v. State, 135 Fla. 589, 185 South. Rep. 323.

We have been interested in the argument presented that there is a real difference between the cases of Ellis v. State and Cortes v. State, *supra*, and the one at bar because of the reasoning of Mr. Chief Justice TAFT in Carroll v. U. S., 267 U. S. 132, 69 L. Ed. 543, 45 Sup. Ct. Rep. 280, 30 A. L. R. 790, where distinction was made between searches of dwellings and the like and vehicles because of the mobility of the latter, hence, the impracticability of obtaining warrants, but we do not find application of the principle appropriate here.

The remaining criticism of the procedure in the criminal court of record is that the jury were not sent from the court room while witnesses were examined apropros the manner of search and the admissibility, therefore, of the resultant evidence.

We know of no rule of law which makes it incumbent on the court to excuse the jury while preliminary questions are propounded to test the competency of evidence, except possibly in criminal cases where confessions are sought to be offered, and none has been cited.

It was a matter within the judge's discretion. He decided against the defendants and there is no indication that he was guilty of abuse or that harmful error was committed.

The judgment is—

Affirmed.

TERRELL, C. J., WHITFIELD and CHAPMAN, J. J., concur.

BUFORD, J., dissents.

JUSTICE BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.