**FLETCHER FULLER and ABNER FULLER v. THE STATE OF FLORIDA.**

31 So. (2nd) 259                       June Term, 1947
June 24, 1947                     Special Division A
Rehearing denied July 30, 1947

*Charles A. Savage, Carl F. Crossley,* and *Edward W. Waybright, Sr.,* for appellants.

*J. Tom Watson,* Attorney General, and *Reeves Bowen,* Assistant Attorney General, for appellee.

CHAPMAN, J.:

On November 10, 1945, an information in five counts drafted under the several provisions of Section 849.09, Fla. Stats. 1941 (FSA), was filed in the Circuit Court of Marion County, Florida, against Fletcher Fuller, Abner Fuller, Emory Knight and Bernard Knight. Fletcher Fuller and Abner Fuller each filed motions for severance, reciting various grounds for the entry of an order granting separate trials but these motions were denied. The information on motion of the State was nolle prossed as to Emory Knight; a severance ordered and continuance granted as to Bernard Knight. Fletcher Fuller and Abner Fuller upon being arraigned entered pleas of not guilty.

Prior to arraignment of appellants below the State Attorney filed a bill of particulars in support of the information and pertinent parts are viz:

"That the defendants operated and maintained a Lottery in a house or houses located approximately One Hundred yards North of the Seaboard Air Line Railway Right of Way on the East side of what is known as Anthony Road, just North of the City Limits of the City of Ocala; said place of business being known as "Do Drop Inn," along with several buildings within the curtilage, from November 10th, 1943 to November 10th, 1945 continuously.

"And the State Attorney further says: That several of said houses were used by the said Defendants for gambling and gambling purposes and gambling headquarters for the operation of a lottery; that also from said buildings operations were conducted by the sale of tickets on various lottery games more particularly known as "Cuba" and "Bolita," sometimes known as "night-house," throughout Marion County, Florida, continuously from November 10th 1943 to November 10th 1945, and that various other houses, a more particular description of same being to the State Attorney unknown, were also used at times in Marion County, Florida, for gambling puposes over said period which are to the State Attorney unknown."

The case was tried before a jury which resulted in a verdict of not guilty as to counts 1, 2 and 3 of the information and guilty as to counts 4 and 5 which are viz:

"And the State Attorney aforesaid, upon his oath aforesaid, further information makes that Fletcher Fuller, Abner Fuller, Emory Knight and Bernard Knight, in the County of Marion, in the State of Florida, at divers times between the 10th day of November 1943 and the 10th day of November 1945, did transmit certain lottery tickets and coupons representing an interest in a lottery yet to be played, the aforesaid lottery being commonly known as Cuba, a further description of said lottery being to the State Attorney unknown.

"And the State Attorney aforesaid, upon his oath aforesaid, further information makes that Fletcher Fuller, Abner Fuller, Emory Knight and Bernard Knight, in the County of Marion, in the State of Florida, at divers times between the 10th day of November, 1943, and the 10th day of November 1945, did sell lottery tickets and coupons representing an interest in a lottery yet to be played, the aforesaid lottery being commonly known as Cuba, a further description of said lottery being to the State Attorney unknown. Contrary to the form of the Statute in such cases made and provided and against the peace and dignity of the State of Florida."

The defendants below for the first time in their motion for a new trial challenged the legal sufficiency of counts 4 and 5 of the information which was raised by grounds 3, 4, 5 and 6, and are viz—(3) "The verdict of guilty on the 4th count of the information is invalid, because said Count does not charge a crime." (4) "That the verdict on the 5th Count of the information is invalid because it fails to charge a crime." (5) "That the verdict on the 4th Count of the information is invalid in that it fails to charge a crime because it does not allege that the lottery was for money or other thing of value." (6) "The verdict in the 5th Count of the information is invalid in that it fails to charge a crime, because it does not allege that the lottery was for money or other thing of value." A motion for new trial was made and denied when the trial court sentenced Fletcher Fuller and Abner Fuller to the State Prison for a period of three years at hard labor. They have appealed here.

Counsel for appellants contend that the omission from Counts 4 and 5 of the information of the following pertinent

words of Section 849.09 FSA, viz:—"for money or other thing of value" render each of the counts fatally defective and invalid and as a consequence the judgments of conviction entered below must by this Court be reversed. Counsel cite and rely on our holdings in Strachaan v. State, 116 Fla. 736, 156 So. 885; D'Alessandro v. State, 116 Fla. 703, 156 So. 703; Farrell v. State, 135 Fla. 736, 185 So. 873.

Count 4 charges that the appellants between the 10th day of November 1943 and November 10th 1945, did *transmit* lottery tickets and coupons representing an interest in a lottery yet to be played, commonly known as "Cuba." Count 5 charges that the appellants between the 10th day of November 1943 and the 10th day of November 1945 did *sell* lottery tickets and coupons representing an interest in a lottery yet to be played commonly known as "Cuba." The gravamen of Count 4 was to *transmit* lottery tickets commonly known as "Cuba" representing an interest in a lottery yet to be played. The gravamen of Count 5 was to *sell* lottery tickets commonly known as "Cuba" representing an interest in a lottery yet to be played.

The language of Section 849.09 FSA is broad, comprehensive, and designed to make unlawful all lottery schemes, devices or transactions. It is unlawful for any person in this State to set up, promote . . . or transmit by mail or otherwise, any lottery tickets. It is unlawful for any person in this State to set up, promote . . . or to *sell,* offer for sale, . . . any lottery tickets. . . . The words "for money or other thing of value" were pertinent and material in the cited cases but Counts 4 and 5 are drafted under other provisions of Section 849.09 and these words are wholly inapplicable to the case at bar.

Arguendo, let us concede, that the words, "for money or other thing of value" are pertinent, material and necessary to sustain a conviction in the case at bar. We can simply turn to the testimony of the witness Hampton who paid $8.00 for "Cuba" and at the drawing won the number 70. He was paid $420 but contended that he should have received an additional sum. He telephoned Fletcher Fuller at his place of business and Fuller came down and he with Hopkins talked

over the disputed amount with Hampton, the result being that additional money was sent to Hopkins and by him delivered to Hampton. Other witnesses testified to the sale of Cuba for the Fullers and headquarters of the enterprise was at the Fuller Music Company's place of business. In the case of Victor v. State, 141 Fla. 508, 193 So. 762, we held that it was a matter of common knowledge that the game of "New York Bond" was a scheme for the distribution of prizes by lot or chance. What has been said by us of the game of "New York Bond" can or may be said of the games of "Cuba" and "Bolita."

The contention that the omission of the words "for money or other thing of value" rendered Counts 4 and 5 invalid was raised on motion for a new trial while Section 909.06 FSA requires all motions to quash informations or indictments be made before or at the time he pleads thereto and if a defendant fails so to do, then all objections to the infirmities of the information are waived and cannot be raised on motion for new trial. See West v. State, 149 Fla. 436, 6 So. 2nd 7. Courts under Section 920.05, Fla. Stats. 1941 (FSA), can grant motions in arrest of judgments only (a) where the information does not charge an offense; (b) the Court is without jurisdiction of the case; (c) because of uncertainty of the jury's verdict. Therefore our holdings in Strachaan v. State, D'Alessandro v. State, and Farrell v. State, *supra,* as cited by counsel for appellants for a reversal are not controlling nor applicable in the case at bar because a different set of facts are here presented along with the allegation in counts 4 and 5 of the information of the violation of a different portion of Section 849.09, Fla. Stats. 1941 (FSA), than were charged in the cited cases.

The record discloses that Fletcher Fuller was the record title owner of the real estate upon which the buildings were situated and controlled the same. The Fuller Music Company occupied one of the buildings, another was occupied by the Do Drop Inn, and other buildings owned by Fuller were used for different purposes. The evidence shows that the "Cuba" salesmen returned their books and cash to a table situated in one of these buildings and some of the Bolita salesmen

obtained their books and tickets at the table. The Fullers in some instances sent the books and Bolita tickets to their salesmen. It is shown that many of the throwings or Bolita drawings were held in one of these buildings when Fletcher Fuller and Abner Fuller were present. The Marion County officers arrested Abner Fuller on the property and requested of him permission to search the property, which was granted, although Fletcher Fuller was not present when Abner Fuller was arrested and granted permission to search the premises. The officers found about the premises searched tickets, books, pads, rubber stamps, marked "Cuba," "Extra," "Special" sheets and other paraphernalia. Abner Fuller did not testify and his relationship with his brother, Fletcher Fuller, does not clearly appear by the testimony. In one of the questions posed for adjudication we are asked to consider Abner Fuller an employee of Fletcher Fuller, but our study of the entire record fails to sustain this inference.

It is contended that since Fletcher Fuller, the owner of the property, never consented to the search by the officers and the search was without a search warrant, then the articles obtained in the search of the building could not constitutionally be adduced in evidence against Fletcher Fuller, although his brother, Abner Fuller, consented to the search. We cannot assent to this conclusion. See 24 R. C. L. 723, par. 27. It has been held that a search of a defendant's office, made with the consent and assistance of one in charge thereof and found by the court to be his agent, did not constitute an infringement on the defendant's constitutional immunity against unreasonable search and seizure. State v. Griswold, 67 Conn. 290, 34 Atl. 1046; People v. Weaver, 241 Mich. 616, 217 N. W. 797; 47 Am. Jur. 584, par. 72. We fail to find in the record a motion to suppress the challenged evidence and ruling thereon prior to arraignment as outlined by this court in Robertson v. State, 94 Fla. 770, 114 So. 534. The admissibility of such evidence must seasonably be brought to the attention of the court and a ruling obtained, otherwise the defendant waives the right to have it excluded. Robertson v. State, *supra;* see Section 901.19, Fla. Stats. 1941, (FSA), and Italiano v. State, 141 Fla. 249; 193 So. 48.

The record discloses that appellants and counsel knew prior to the trial that the officers seized certain articles situated in the building when Abner Fuller was arrested. The legality of this search was not challenged prior to trial by motion to suppress the evidence. Robertson v. State, *supra*. This evidence obtained on the search was at the trial aduduced in evidence on the part of the State over the objections of counsel of appellants. The record reflects that during the progress of the trial at a time when the State was putting on its evidence in chief the jury was excused, in order that the trial court might hear evidence and rule on the legality of the search when certain articles were obtained and at the trial offered in evidence by the State. The trial court announced that he wanted to hear all the evidence of the respective parties on this point in the absence of the jury, and the State immediately put before the trial court its testimony as to the seizure of the proffered articles. The evidence as offered on the point by the State at least made a *prima facie* showing. The court then inquired of defendants' counsel if they had testimony to offer on this collateral issue and in reply they requested the court to allow them until the following morning to make an announcement. When court convened on the following morning counsel for defendants announced that they "did not at this time" have evidence to offer on the issue under consideration by the court. The jury was returned to the court room and the State again presented the same evidence to the jury as to the seizure of the articles in defendants' building and counsel for defendants did not offer any testimony to the contrary, although an opportunity so to do was allowed, but they elected to interpose objections to the admission of the articles seized as adduced by the State.

After the State rested its case, counsel for appellants proffered to prove in effect that C. E. Simmons, E. L. Bland and Abner Fuller would testify that they were present at Fletcher Fuller's place of business at a time when Abner Fuller was arrested by the officers and Fletcher Fuller's place was searched. That the building was searched by the officers without a search warrent and without the consent and permission of Abner Fuller. That the officers had arrested Abner

Fuller and at a time when in custody, over Abner Fuller's protest, contrary to his desires and without his consent, searched the building and thereby obtained the articles which were later adduced in evidence by the State over defendants' objections.

It is probable that the proffered testimony was admissible in contradiction to the evidence adduced by the State on the point in issue. Counsel for the appellants had been granted an opportunity in the absence of the jury to offer their testimony on the point in issue, but the record discloses that they announced in open court that they "did not at this time" have evidence to offer on the issue. It is well established law that the method of conducting trials and the introduction of evidence is left to the reasonable discretion of the trial court and every presumption is in favor of the correctness of such rulings. Hughes v. State, 61 Fla. 32, 55 So. 463; Adams v. State, 56 Fla. 1, 48 So. 219. Counsel for appellants at the time of announcing that they "did not at this time" have any evidence to offer on the issue then before the court, knew that broad discretion by law was conferred on trial courts and it was counsel's duty to offer such evidence in their possession as was material and known to them and in declining or omitting so to do they waived their right to offer evidence or make a proffer at a subsequent time during the progress of the trial. Gilman v. Butzloff, 155 Fla. 888, 22 So. (2nd) 263.

Counsel for appellants next contend they had a right to the concluding argument to the jury under the several provisions of Section 918.09, Fla. Stats. 1941 (FSA). The record discloses that the witnesses Emory A. Knight, Lillian Ward, Rachael Ward and E. A. Bland were offered as witnesses in behalf of one of the defendants, Abner Fuller. The record further shows that Abner Fuller did not take the stand or give testimony in his own behalf, while the other defendant, Fletcher Fuller, was sworn as a witness and testified before the jury. Counsel announced as the witnesses were called that they were offered in behalf of Abner Fuller and the defendants on trial had the same counsel. It is contended here that the trial court deprived the appellants of rights conferred under Section 918.09, *supra*. The announcement by counsel

that the named witnesses were called in behalf of Abner Fuller is by no means conclusive. The language of the statute is viz: "A defendant offering no testimony in his own behalf except his own shall be entitled to the concluding argument before the jury." An inspection of sixty-five pages of testimony offered by the defense in the case shows that much of it was helpful, beneficial and tended to show that neither of the defendants was guilty of the crimes charged in the information. See Landrum v. State, 79 Fla. 189, 84 So. 535.

The trial court in one of his instructions read to the jury Section 849.01, Fla. Stats. 1941 (FSA). Counsel for appellants contend that the reading of this Section to the jury was misleading, confusing, not justified by record, was prejudicial and erroneous. An examination has been made of the cited cases relied upon for a reversal—beginning with Porter v. Ferguson, 4 Fla. 102, and ending with Motley v. State, 155 Fla. 545, 20 So. (2nd) 798. These cases in a general way sustained the view that it is error to instruct or charge a jury on "inaccurate issues" or on "misleading issues." The bill of particulars on the part of the State filed in support the five counts of the information influenced the trial court, no doubt, in giving the challenged instruction as the following language appears therein: "That several of said houses were used by said defendants for gambling and gambling purposes and gambling headquarters for the operation of a lottery." The testimony adduced by the State clearly establishes the guilt of the appellants under counts four and five of the information, and it cannot be said that the challenged charge was prejudicial as the verdict of the jury is supported by the weight and preponderance of the evidence. If the challenged instruction was erroneous, we fail to see where it has militated against the appellants as they were acquitted under three counts and convicted under two. If error exists it is harmless.

It is next contended that the judgment should be reversed because the trial court's instruction on the penalty for the crime or crimes charged by the information and denounced by the statutes as read by the trial court, were misleading and confused the jury. Chapter 22775, Acts of 1945, Laws of Florida, makes it the duty of the trial court to instruct the

jury as to the penalty for the charge or charges under consideration. The answer to this contention is that the trial court read to the jury Section 849.09, Fla. Stats 1941 (FSA), inclusive of the penalty. We have, in the preceding assignment, held that the reading to the jury of Section 849.01 was harmless error. The transcript at page 377 reflects the reading by the trial court of Section 849.09, inclusive of the penalty, to the jury and it has not been made to appear that Chapter 22775, *supra,* was violated.

Appellants' questions seven and eight have been considered in the light of the record and the applicable law. The record fails to reflect error in connection with these questions or either of them.

Affirmed.

THOMAS, C. J., TERRELL, J., and McNEILL, Associate Justice concur.