179 So.2d 408 (1965)
Kenneth Bernard MOFFETT, Appellant,
v.
STATE of Florida, Appellee.
No. 5885.
District Court of Appeal of Florida. Second District.
October 29, 1965.
*409 W.D. Frederick, Jr., Public Defender, and Joseph X. DuMond, Jr., Asst. Public Defender, Orlando, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Robert G. Stokes, Asst. Atty. Gen., Lakeland, for appellee.
SMITH, Judge.
This is a direct appeal from a conviction and sentence for robbery and aggravated assault. Defendant contends the trial court erred in admitting into evidence over objection incriminating articles and confessions allegedly obtained by unlawful means. The state's evidence disclosed that defendant voluntarily confessed when confronted with articles seized from an apartment which he shared under undisclosed circumstances with other persons who consented to a search. The trial judge held that defendant had waived his right to controvert *410 the status or authority of such persons by failing to file a pre-trial motion to suppress the articles as evidence. Further, he declined to credit testimony that police officers threatened defendant and refused him permission to consult with his attorney. We find no error and affirm.
Two employees positively identified defendant as the robber who took three loan office cash bags from them at gun-point in Orlando on February 21, 1964. Each further identified the cash bags and a gun produced by the prosecution as articles involved in the robbery.
Outside the jury's presence Detective Sergeant Cody of the Duval County Sheriff's Office identified the bags and gun as articles which he seized in a search of a Jacksonville apartment on March 3, 1964. Cody testified that he made the search in the presence and with the written permission of three young women who identified themselves as co-occupants of the premises. Cody further testified that on March 4, 1964, defendant orally confessed when confronted with the loan office bags and gun. On cross Cody testified that he did not know who paid the rent for the apartment when he made the search. The young women told him that they resided in the apartment, and that it was their dwelling. Subsequent to the search defendant told Cody that he rented the apartment. Cody further testified on cross that he arrested the defendant for vagrancy on March 3, 1964; that defendant was still under arrest when he orally confessed the next day; and that Cody did not believe defendant had previously been interrogated by other officers. Finally, Cody testified as follows on cross and redirect:
"Q. Did he at any time tell you he wanted to consult with an attorney?
A. I don't remember that he made that statement; I don't remember.
Q. He may have, and you don't remember?
A. I don't remember his making that statement to me; I don't remember his saying, `I want legal counsel.'
MR. DUMOND: I have no further questions.
REDIRECT EXAMINATION BY MR. CRARY:
Q. Well, is it your statement, Sergeant, that he did or did not request the services of an attorney?
A. He did not. I have no memory of it. He did not to me.
MR. CRARY: No further questions."
Still outside the jury's presence Sergeant Suber, also of the Duval County Sheriff's Office, testified that he was present when defendant orally confessed on March 4, 1964, as well as March 5, 1964, when defendant's statement was reduced to writing. According to Suber defendant was cooperative in making the oral statement. He identified the gun as one used by him in holding up an Orlando loan office in February. Subsequently, the written statement was voluntarily given in the presence of Suber, Suber's Secretary, and Sergeants Van Scoyoc and Smith of the Orlando Police Department. On cross Suber testified as follows:
"Q. Did he mention anything about making a phone call?
A. I don't recall.
Q. Do you recall that he wanted a lawyer?
A. No sir, I don't recall it."
Suber's secretary testified that the written confession was a correct and accurate transcript of her verbatim shorthand notes, that defendant appeared to be volunteering the information, was cooperative and did not appear to be under any physical or mental strain.
*411 Van Scoyoc, who first saw the defendant on March 5, 1964, testified that he did not in Van Scoyoc's presence ask for an attorney, ask to consult an attorney or ask to make a telephone call.
All of the state's witnesses testified that no threats were made in their presence.
When the state completed its evidence before the judge, defendant's attorney indicated he would offer testimony concerning the admissibility of the seized articles, as well as the confession. The trial court ruled, however, that defendant had waived his right to controvert the status or authority of the young women who consented to the search by failing to file a pre-trial motion to suppress the seized articles as evidence.
Defendant then testified that he was arrested for vagrancy by Sergeant Suber on March 2nd and held under $50,000 bond. Suber questioned him in the Sheriff's Office about a series of Jacksonville robberies and when defendant said he did not wish to make any statements and would like to use a phone to call his attorney, Suber told him he could not use a phone. Suber then ceased questioning defendant, took him to the jail, booked him for vagrancy and put a $50,000 bond on him. After he had been booked defendant asked the warden of the jail if he could make a telephone call and "he said it was at the requesting (sic) officer that I don't use a telephone or receive any visitors." The next morning defendant was taken to the Sheriff's Office for questioning. About ten detectives were there asking about a series of robberies. Defendant told them he did not wish to make any statement and that he would like to call a lawyer. "Chief Patrie" told him that he did not have the right to use the telephone until after his questioning was finished and that he could not consult a lawyer. They then brought in the articles taken from his apartment, asked him if he wished to make a statement and defendant refused. They told him his women friends were in custody and if defendant "didn't go along with what they were talking about, the statements and the stuff they had," they would lock the young women up for vagrancy. Defendant finally told them he would cooperate if they would release the girls.
On cross defendant testified that between his arrest and his statement he admitted to some of a series of robberies concerning which he had been questioned. Defendant first reiterated his prior testimony that he was arrested, questioned, booked and put on bond by Sergeant Suber. On further cross he conceded that it was Cody who had arrested him. Defendant indicated finally that Cody was "the only one who was responsible for all [those] statements made to [him] * * * about no telephone, no this, no that."
The trial before the court while the jury was not present concerned the admissibility of confessions purportedly obtained by confronting defendant with evidence seized in the search. Evidence concerning the search was offered with evidence concerning the confession because the two matters were closely related. In the course of this part of the trial the court noted that there had been no pre-trial motion to suppress evidence seized in the search and that the court would not stop the trial to go into a controverted question of search and seizure. It appears, therefore, that the court overruled the defendant's objections to the admissibility of the evidence seized in the search solely on the ground that the defendant had not moved to suppress prior to trial.
We affirm this ruling of the trial court. In most jurisdictions where evidence obtained by unlawful search and seizure is inadmissible, which is and has been the rule in Florida, the further rule prevails that an objection to evidence on the ground that it was obtained by an unlawful search and seizure ordinarily comes too late where made for the first time at the trial. See Annotation 50 A.L.R.2d 531, 584 (1956). In Robertson v. State, 1927, *412 94 Fla. 770, 114 So. 534, the Supreme Court extensively discussed the rule stating that it was the "better and safer practice" to move to suppress in advance of trial and noted that such a motion is not always indispensable. After stating that there was considerable apparent diversity of opinion, the court noted that the cases could be substantially harmonized by noting the fact that, where a preliminary motion was held unnecessary, the illegality of the search usually appeared from an admitted or uncontroverted state of fact or from the face of the warrant or affidavit upon which it was based, therefore raising only a question of law, while in those cases where a preliminary motion was held necessary the legality of the search usually depended upon a controverted issue of fact. The reason stated for the rule requiring such a motion prior to trial was that a court will not halt trial of litigation in chief and embark upon trial of controverted fact issues for the purpose of determining the competency or admissibility of proffered evidence as against an objection that it was procured by illegal means. We acknowledge the fact that in Robertson the court was dealing with a case where a preliminary motion was made and denied, no objection was made to the receipt of the evidence at the trial and therefore the impression could be gained that the statements in the opinion as to the necessity of a preliminary motion were mere dicta. We conclude that the statement of that rule was an essential part of the route necessarily travelled in the court's process of determining the question at hand and that the decision is determinative. This was the conclusion of the annotator in A.L.R., supra, and as there stated the waiver rule prevails in most jurisdictions and was recently adopted by Louisiana[1] as a result of its adoption of the exclusion rule pursuant to the Mapp case.[2] We further note that any questions which might exist by virtue of the decision in Robertson, supra, with respect to the necessity of a pre-trial motion to return the property or suppress the evidence as a predicate for an objection to receipt of the evidence at trial on the ground of an unlawful search and seizure were laid to rest in the Fuller case.[3] There the court noted that it failed to find in the record a motion to suppress the evidence and a ruling thereon prior to arraignment and then stated:
"The admissibility of such evidence must seasonably be brought to the attention of the court and a ruling obtained, otherwise the defendant waives the right to have it excluded."
This requirement of a pre-trial motion, unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, has been the federal rule for many years. It originated in decisions of the Supreme Court requiring that procedure which were subsequently crystalized by the adoption of Rule 41(e) of the Federal Rules of Criminal Procedure. The federal rule permits the court in its discretion to entertain a motion at the trial. The application of the rule does not, therefore, impair a defendant's rights under the Constitution of the United States. Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.
Defendant contends that he was entitled to raise the point by objection at the trial because the illegality of the search affirmatively appeared from admitted or uncontroverted facts. We do not agree. The state's evidence did not disclose a search without warrant of an apartment exclusively controlled by defendant upon the purported authority of persons present merely as casual guests. On the contrary, it indicated that the young women who consented *413 to the search resided in the apartment, sharing its use with defendant under circumstances not disclosed by the record. So far as appears, the consent thus given was based on substantial but undefined possessory rights and interests of the young women in the premises, not upon any authority from defendant, express or implied.[4]
We approach the question of the admissibility of the confession with certain basic principles in mind. An extra-judicial confession is admissible in evidence when it is freely and voluntarily made by the accused and is uninfluenced by any threat, promise, fear, hope or other illegal inducement even though the accused be under arrest and the confession made to the officer having the accused in custody.[5] It may be obtained by questioning of an officer while the defendant is in his custody.[6] The failure to advise the defendant of his constitutional rights does not, standing alone, render an extra-judicial confession made without benefit of counsel inadmissible in evidence at the trial.[7] Its voluntariness may be destroyed by grueling, intensive and long examination causing great discomfort.[8] The mind of the accused must at the time be free to act uninfluenced by fear or hope.[9] The confessions of a party accused of crime are not admissible in evidence unless it is clearly shown that they are voluntarily made.[10] When it is made to appear prima facie by evidence of the state that the confession was free and voluntary the burden is then cast on the defendant to rebut this proof.[11] The question is to be determined solely by the trial judge in the absence of the jury as a mixed question of law and fact from a consideration of the evidence offered by either party bearing upon the circumstances, conditions and surroundings under which the confession was made, bearing in mind that all confessions should be acted upon with great caution.[12] A voluntary extra-judicial confession to an officer by one in custody is not rendered inadmissible by reason of the fact that it was not preceded by a warning or caution against self-incrimination.[13] The credibility of a confession is for the jury.[14] After a determination by the trial judge that the confession was voluntary an appellate court must accord to his finding the presumption that it was correct,[15] and the appellate court will not disturb the ruling *414 unless error is clearly made to appear. While the defendant makes the broad contention that the confession was inadmissible because of all the circumstances surrounding its elicitation, his specific argument, which is the only real question before us with reference to the confession, is that the facts here are controlled by the Escobedo decision.[16]
We will examine the Escobedo decision step by step with the facts in this case. The first element in Escobedo was: "[T]he investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements * * *." This element is present in the case at bar. The second element in Escobedo was: "* * * the police have not effectively warned him of his absolute constitutional right to remain silent." This element is also present in the case at bar. The last element in Escobedo was: "* * * the suspect has requested and been denied an opportunity to consult with his lawyer." By admitting the confession the trial judge necessarily found from the evidence that this defendant had not requested and been denied an opportunity to consult with his lawyer. As indicated above, the testimony was conflicting as to whether defendant requested and was denied an opportunity to consult with his attorney and whether his confession was voluntary or induced by threats. The credibility of the witnesses was for the trial judge, who heard and saw the witness, and, as he had a right to do, believed the officers rather than Moffett.
Affirmed.
ALLEN, C.J., and SHANNON, J., concur.
NOTES
[1] State v. Davidson, 1965, 248 La. 161, 177 So.2d 273.
[2] Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R. 2d 933.
[3] Fuller v. State, 1947, 159 Fla. 200, 31 So.2d 259.
[4] Baugus v. State, Fla. 1962, 141 So.2d 264 (cert. den., 371 U.S. 879, 83 S.Ct. 153, 9 L.Ed.2d 117); Fuller v. State, supra. See also Burge v. United States, 9 Cir.1965, 342 F.2d 408 (appeal pending); United States v. Sferas, 7 Cir.1954, 210 F.2d 69, (cert. den., 1951, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086); 29 Fla. Jur., Search and Seizure, § 39; 47 Am. Jur., Search and Seizures, § 72; 79 C.J.S. Searches and Seizures § 62; Annot., 31 A.L.R.2d 1078 (1953).
[5] Nickels v. State, 1925, 90 Fla. 659, 106 So. 479; Dawson v. State, Fla. 1962, 139 So.2d 408.
[6] Davis v. State, 1925, 90 Fla. 317, 105 So. 843.
[7] Montgomery v. State, Fla. 1965, 176 So.2d 331.
[8] Chambers v. State, 1936, 123 Fla. 734, 167 So. 697.
[9] Green v. State, 1898, 40 Fla. 474, 24 So. 537; Frazier v. State, Fla. 1958, 107 So.2d 16.
[10] Murray v. State, 1889, 25 Fla. 528, 6 So. 498; Hooper v. State, Fla.App. 1959, 115 So.2d 769.
[11] Davis v. State, supra; Cochran v. State, Fla.App. 1960, 117 So.2d 544, 79 A.L.R. 2d 638.
[12] Coffee v. State, 1889, 25 Fla. 501, 6 So. 493; Sciortino v. State, Fla.App. 1959, 115 So.2d 93.
[13] McDonald v. State, 1915, 70 Fla. 250, 70 So. 24; Jennings v. State, Fla.App. 1958, 106 So.2d 99.
[14] Nickels v. State, note 4, supra.
[15] Thomas v. State, 1910, 58 Fla. 122, 51 So. 410; Chavigny v. State, Fla.App. 1959, 112 So.2d 910.
[16] Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.