251 So.2d 565 (1971)
James Edward STEVENS, Appellant,
v.
STATE of Florida, Appellee.
No. O-86.
District Court of Appeal of Florida, First District.
August 19, 1971.
*566 John Paul Howard, Jacksonville, for appellant.
Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
RAWLS, Judge.
Appellant's primary point on this appeal from a conviction of the crime of rape is that the testimony of police officers present at a lineup wherein the victim and another witness identified appellant as the attacker was hearsay evidence and should not have been allowed. He also contends that his constitutional rights were violated because: (1) He was subjected to an illegal search; (2) The jury was allowed to determine the voluntariness of a statement made after his arrest; (3) A prospective juror made a prejudicial statement; (4) Inflammatory photographs were allowed into evidence; and (5) A statement made before defendant was advised of his rights was allowed into evidence.
The facts in the case are as follows: The victim (age 16) and her boy friend had gone to a movie on a motorbike. On the way home at approximately 11:00 p.m., they stopped by a park bench to "kiss and talk." While there, they were approached by three negro youths, one of whom asked for cigarettes and permission to ride the motorbike. When permission was refused, he approached the victim, placed his arm around her shoulders and commented that she was a "good-looking woman." As the couple tried to leave, he struck the victim's boy friend in the face, knocking him down, and grabbed her. The uncontradicted evidence showed that he and a second boy proceeded to attack the girl while the third boy, wearing brass knuckles, restrained the boy friend. The victim was severely beaten about the face. She testified that she believed the first boy who grabbed her and threw her down was unable to pull down her pants so he allowed the second boy (who had been holding her arms) to rape her first. The two boys switched places again but flashlights were seen approaching and all three boys fled. The victim was taken to the hospital where several photographs were made. The examining doctor testified that she was badly beaten in the face, her hymen had been ripped causing bleeding, and she was in a state of shock.
Approximately 10 minutes after the attack occurred, the police (who had been searching the park) located the defendant (appellant) nearby wearing a dark shirt and bloodstained pants. The police searched him, recovering a straight razor, and placed him under arrest. They did not advise him of his constitutional rights nor did they make any attempt to question him. As they were placing him in the police car, he commented that his car was parked nearby and he didn't want to leave it. He then showed the police where the car was parked and they called a wrecker to tow it to the police station. At the station appellant's clothing was exchanged for prison clothing; he was fully apprised of his constitutional rights and questioned. Appellant signed a statement admitting that he was involved in the incident and had tried to rape the victim but failed to effect penetration. He also identified the other two boys. The next day appellant was *567 placed in several lineups and identified by both the victim and her boy friend as the attacker.
At trial defendant testified that he was the second boy involved in the rape; that he had not held the victim's arms but rather had remained at her head trying to protect her face from being beaten; and that he had refused to rape the victim when offered the opportunity. The third boy (who had remained with the boy friend) testified against appellant and identified him as the person who had raped the victim. Two police officers testified regarding the lineup proceedings. Both officers testified that appellant had been identified as the attacker at the lineup. No timely objection was made to the testimony of the first officer; however, the trial judge did sustain an objection to the second officer's testimony as hearsay and gave appropriate instructions to the jury to disregard the testimony of both officers. Appellant was convicted of rape and sentenced to life imprisonment.
Appellant raises numerous points on appeal most of which we find to be without merit. In short order, we find:
1. The trial court did not err in refusing to disqualify the entire jury venire when one prospective woman juror asked to be excused because "she had been raped by a colored person the year before" and did not feel she could be impartial. The statement in no way implicated the defendant. The court did not abuse its judicial discretion in refusing to disqualify all prospective jurors who heard the statement.
2. There is no merit in appellant's contention that his constitutional rights were violated when he was not immediately taken before a committing magistrate. This issue was not raised at the trial level and the record is devoid of information as to just when appellant was taken before a magistrate. However, appellant asserts in his brief that some four and one-half to five hours elapsed between the time he was arrested and the time he was taken before a magistrate. Assuming this assertion to be correct, we conclude that this is not an "unreasonable delay." Pettyjohn v. United States.[1] Appellant made and signed a voluntary statement implicating himself in the attack. The voluntary nature of this statement was first ascertained by the trial judge who admitted it into evidence for a jury to determine its evidentiary value. As in Paramore v. State,[2] "The voluntariness of the confession was a mixed question of fact and law which was decided first by the trial judge and then by the jury based on the evidence adduced."
3. Appellant freely, without any interrogation or prompting, voluntarily advised the arresting officers that his car was parked nearby and that he didn't want to leave it. Such statement was properly admitted into evidence and was not a violation of appellant's constitutional rights. Cameron v. State; Leach v. State; and Myrick v. State.[3]
4. The two photographs of the victim were also properly admitted into evidence. We have examined the two photographs, one made several hours after the attack and the other the next day. The first shows the victim in a disheveled state, her face dirty and scratched, with a blanket wrapped around her. The second shows the victim's head and bruished face after she had time to wash her face and comb her hair. In neither photograph is the victim's body exposed nor is there obvious blood. Both photographs demonstrate that force had been used against the victim during the attack, an essential element in a charge of *568 rape.[4] The trial judge did not abuse his discretion in allowing them into evidence as they were relevant to serve some purpose other than to "influence unduly the jury's reactions". Leach v. State, supra, and Mardorff v. State.[5]
5. We conclude that there is no merit to appellant's contention that he was illegally arrested and searched and that therefore the evidence obtained (i.e., straight razor and bloodstained clothing) should not have been introduced into evidence. The police officers had ample reason to stop, search and arrest appellant when they located him near the scene of a recent rape wearing bloodstained clothing. As noted by appellant, F.S. § 901.15(2) and (3), F.S.A. describe those situations wherein the police may arrest without a warrant as:
"(2) When a felony has in fact been committed, and he has reasonable ground to believe that the person to be arrested has committed it."
or
"(3) When he has reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it."
The appellant was fully aware that the physical evidence obtained during this search (the straight razor) was in the State's possession. The bloodstained clothing did not come into the State's possession until after appellant had been arrested and taken to the police station. The transporting officer who later saw the clothing removed was fully qualified to testify as to appellant's appearance when he first saw him, and establish "chain of custody" of the clothing. The issue of lawful search and seizure was not raised by appellant in pretrial motion and thus the court determined that it was untimely. See Moffett v. State,[6] and Kelly v. State,[7] which held that defendants must file pretrial motions to suppress any evidence they feel was obtained in an illegal search and seizure.
6. Finally, we consider appellant's point on appeal concerning the testimony of two police officers regarding the lineup identification of defendant. The sequence of events pertaining to this point is: The victim during the course of her examination was unable to identify this defendant as one of her assailants. Following the examination of the victim, the State called Officer Permenter and adduced from him the fact that the victim, within 24 hours subsequent to the assault, had picked out Defendant Stevens from a proper lineup as one of her attackers. At this point defense counsel moved for a mistrial, which was denied by the trial court. The next witness called by the State was the victim's boy friend who made an in-court identification of defendant as one of the two boys who raped his girl friend and further testified that he had picked out the defendant as one of the rapists at a lineup held on the same occasion as aforementioned. On cross-examination, defense counsel questioned this witness as to whether such defendant was the person the witness had identified at the lineup. The court recessed the trial overnight following the conclusion of the boy friend's testimony. Upon reconvening of trial the next morning, the State proffered the testimony of Officer Parker. Defense counsel timely objected to any testimony by Officer Parker regarding a lineup identification made either by the boy friend or the victim. The objection was sustained and the trial court instructed the jury as follows:
"Ladies and gentlemen of the jury, yesterday there was some reference to the *569 testimony made by the officer relative to a lineup over at the jail. This officer here today has made some reference to a lineup.
"The Court is ruling, as a matter of law, that the testimony relative to the lineup constitutes hearsay testimony because it reflects what was told to the officer by a person, see which was hearsay  something that was told him not in the presence of the defendant. And I want you to please exclude any reference to the lineup yesterday and any reference to the lineup today because the results of the lineup would be based only on hearsay testimony.
"Please exclude that from your mind."
It is upon the foregoing events that defendant now contends the trial judge committed reversible error in denying his motion for a mistrial. As to Officer Permenter's testimony, the record discloses that he observed the victim as "she picked out" Defendant Stevens as one of the three persons who attacked her in Boone Park. This identification was made by the victim around 4:30 p.m. on the day following the assault. The record does not disclose that the victim "told" Officer Permenter that defendant was one of her assailants on the previous night; it reflects that Officer Permenter, while standing by the victim's side, observed her identify Defendant Stevens as one of the three who had within the previous 24 hours criminally assaulted her. At trial, some three months later, the victim was unable to positively identify Defendant Stevens. Logically, it would appear that the sounder rule is as stated in 71 A.L.R.2d, p. 454:[8]
"A reason frequently assigned for the admission of evidence as to a prior identification of the accused is that it is ordinarily more reliable than an identification at the trial, its closer relation to the criminal act in point of time affording less opportunity for deterioration or fading of the identifier's impressions or recollection and for changes in the appearance of the accused or guilty party, and thus enabling the identifier to be more certain or positive as to the identification."
However, as observed by Judge Wigginton, speaking for this Court in Willis v. State:[9]
"* * * Such testimony has always been considered admissible in rebuttal of testimony tending to impeach or discredit the testimony of the identifying witness, or to rebut a charge, imputation, or suggestion of falsity. All courts seem to be agreed, however, that such testimony cannot be considered by a jury as original or substantive evidence as to the identity of the accused as a guilty party, but may be considered in corroboration of the testimony of the identifying witness at the trial. * * *"
we conclude here that the testimony of Officer Permenter was inadmissible because it was submitted by the State as original or substantive evidence. Indulging in obiter dicta, we observe that the testimony of Officer Parker was admissible in rebuttal of the testimony tending to impeach the boy friend's positive identification.
Having concluded that Officer Permenter's testimony was inadmissible, we now consider the controlling question: Did the subject error permeate defendant's trial to such an extent that it constitutes reversible error? We hold that it did not. The State proved its case against defendant prior to resting: 1. By the victim's boy friend's statement that this defendant committed the crime of which he was charged; 2. By an admissible confession that defendant attempted to rape the victim; and 3. By other competent testimony that he was aiding and abetting the commission of the felony. The court fully instructed the *570 jury to disregard the objectionable part of Officer Permenter's testimony. Thus at the conclusion of the State's case, the evidence was manifestly sufficient to withstand defendant's motion for a directed verdict. Of further significance is the fact that defendant did not contend he was not one of the persons involved in this dastardly crime but, to the contrary, asserted his innocence by contending he was trying to protect the victim instead of beating and raping her.
The evidence in this case overwhelmingly supports the verdict and judgment of guilty and we observe that defendant was fortunate in procuring a recommendation of mercy from the jury. The judicial system is not designed to discharge the guilty upon some ethereal notion of deprivation of due process, and in the instant cause the State abundantly provided Defendant Stevens with due process safeguards. It is unfortunate that Defendant Stevens rejected the laws of civilized man and chose to use force and violence to obtain his desires.
The judgment of conviction is affirmed.
SPECTOR, C.J., and MASON, ERNEST E., Associate Judge, concur.
NOTES
[1] Pettyjohn v. United States (1969), 136 U.S.App.D.C. 69, 419 F.2d 651.
[2] Paramore v. State, 229 So.2d 855 (Fla. 1969).
[3] Cameron v. State, 214 So.2d 370 (Fla. DCA 2d 1968); Leach v. State, 132 So.2d 329 (Fla. 1961); and Myrick v. State, 177 So.2d 845 (Fla.DCA 1st 1965).
[4] F.S. § 794.01, F.S.A.
[5] Leach v. State, 132 So.2d 329, 331 (Fla. 1961); and Mardorff v. State, 143 Fla. 64, 196 So. 625 (1940).
[6] Moffett v. State, 179 So.2d 408 (Fla. DCA 2d 1965).
[7] Kelly v. State, 202 So.2d 901 (Fla. DCA 2d 1961).
[8] Anno. 71 A.L.R.2d, p. 454 (citing United States v. Forzano, 1951 CA 2d N.Y., 190 F.2d 687).
[9] Willis v. State, 208 So.2d 458 (Fla. DCA 1st 1968), affmd. 217 So.2d 106 (Fla. 1968).