STATE of Iowa, Appellee,

v.

Harold Marlin STAKER, Appellant.

No. 55229.

Supreme Court of Iowa.

July 31, 1974.

**614**

Mike Wilson, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Darby Maria Coriden, Asst. Atty. Gen., Donald L. Smith, Co. Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REES and UHLENHOPP, JJ.

MASON, Justice.

Defendant, Harold Marlin Staker, appeals from judgment entered on a jury verdict convicting him of manslaughter in violation of section 690.10, The Code, as charged by county attorney's information. The charge arose from an auto accident May 14, 1971, involving Staker and the Charles Price family in which the Price's 17-month-old son, Kenneth, was killed.

Defendant, a truck driver for many years, finished loading his truck with grain in Mingo about 5 p. m. May 14. Noticing a truck belonging to a friend parked in front of Cooper's Lounge in Mingo he proceeded there and talked with his friend for about 40 minutes. During this time he drank one glass of half beer and half tomato juice.

After leaving this tavern and securing the tarp on his truck defendant went to Dick's Tavern in Mingo and had one 12-ounce bottle of beer and a couple of sandwiches. He left Dick's about 7:30 or 8 p. m. and appeared normal and not intoxicated at that time.

After leaving Dick's defendant headed west from Mingo intending to drive to Des Moines and pick up a truck part. About five miles west of Mingo, at an intersection with highway 330, defendant stopped and talked with a friend, Dick Maggard, who had arrived at the intersection from a different direction at the same time. It was now approximately 8:30 p. m. They talked for about five minutes and Maggard testified that in his opinion defendant was not intoxicated at the time.

Defendant then decided to return home to Ames rather than continuing to Des Moines. He proceeded on highway 330 for approximately one mile and then north through Farrar to Maxwell. There he stopped at the Maxwell Tavern to see the owner. Upon entering the tavern he met an old friend he had not seen for eight to ten years; they talked for the next hour and a half during which time defendant drank two bottles of beer.

Approximately 10:30 p. m. defendant left the tavern and proceeded north on County Road S–27 towards highway 30. The county road is a blacktop highway and has a stop sign at the intersection with highway 30; there is no stop sign on highway 30. Charles Price, his wife, 17-month-old son Kenneth, and Price's two younger sisters were proceeding east on highway 30 as they approached the intersection with S–27. As they entered the intersection, Price saw lights on the county road and knew a collision was unavoidable. Defendant's truck struck the Price car near the right door. Police officers and ambulances arrived shortly thereafter and took the seriously injured to the Story County hospital. Efforts to revive Kenneth, both at the scene and the hospital, were unsuccessful.

Story County Chief Deputy John Stark arrived at the scene within minutes of the accident. He went to defendant's truck and saw defendant lying on the ground bleeding from a head wound and stating he had pain in his shoulder. Stark smelled a strong odor of alcohol on defendant's breath and stated, "You have been drinking, Pete." Defendant gave no reply.

Shortly thereafter defendant was taken to the Story County hospital and treated by the attending physician, Dr. Eggers. At the hospital Stark asked defendant if he

would submit to a blood test; defendant refused. Fifteen minutes later Stark and patrolman Starr advised defendant they believed he was intoxicated and they would invoke the implied consent law if he refused the blood test. Defendant had been first advised he was to be charged with operating a motor vehicle while under the influence of alcohol. Finally, defendant consented to the test and replied, "Go ahead and take your damn blood test."

Dr. Eggers drew a blood sample in the presence of the officers at 12:28 a. m. and immediately handed it to patrolman Starr. The blood specimen was not taken for diagnostic or treatment purposes but only to test the alcoholic contents of defendant's blood. The test revealed blood alcohol content of .254. Before commencement of trial defendant moved to suppress the testimony of Dr. Eggers and Dr. Baughman, who made the analysis of the blood specimen. The motion was denied.

In this appeal defendant contends the trial court erred in: (1) overruling his motion for mistrial following a prospective juror's question during voir dire examination; (2) admitting into evidence the blood specimen and test results; and (3) overruling the motion for directed verdict.

I. During voir dire examination a prospective juror asked the county attorney if there was truth to the rumor defendant's license had been under suspension at the time of the accident. This question was apparently asked in the presence of the full panel of prospective jurors. With the panel excused defendant moved for a mistrial on the basis the question or statement prejudiced the entire panel and deprived defendant of a fair and impartial trial.

The trial court denied the motion and immediately admonished the jury panel defendant's license was not under suspension at the time of the accident, and secondly, that in any event the existence of a driver's license was not an essential element in the crime charged and they would be instructed on the charge.

Defendant contends here, as in trial court, the question alerted the jury or raised doubts and suspicions in their minds that defendant had been in trouble prior to this accident. He further contends the admonition given was insufficient to cure error.

Although never articulated in so many words, defendant's real argument must be all members of the panel were biased and prejudiced by remarks of a prospective juror thereby making a fair and impartial trial impossible. The question presented is whether the trial court erred in denying a motion for mistrial; that motion, however, in one respect was in effect a challenge to the entire panel of jurors. This assignment will first be considered as a challenge to the entire jury panel for reasons of bias and prejudice.

In criminal prosecutions a challenge to the entire panel is governed by the same law applicable in civil proceedings. Section 779.3, The Code; see State v. Jones, 193 N.W.2d 509, 512 (Iowa 1972).

This statement is found in 47 Am.Jur.2d, Jury, section 229:

" * * * One entitled to a jury trial has the legal right to demand that the jury to try his cause be drawn and selected in a lawful manner, and he may with perfect propriety, in the manner prescribed by the local practice for making objection or taking exception to the array, claim protection against prejudicial irregularities in the selection of the jury list."

Rule 187(d), Rules of Civil Procedure, provides:

"Before any juror is sworn, either party may challenge the panel, in writing, distinctly specifying the grounds, which can be founded only on a material departure from the statutory requirements for drawing or returning the jury. On trial thereof, any officer, judicial or ministerial, whose irregularity is complained of, and any other persons, may be examined concerning the facts specified. If the court

sustains the challenge it shall discharge the jury, no member of which can serve at that trial."

Clearly, defendant did not challenge the panel in writing for "material departure from the statutory requirements for drawing or returning the jury."

Rule 187(d) having the force and effect of a statute enumerates the matters upon which a challenge to the panel can be founded; the matters thus enumerated are exclusive and the bias or prejudice of the jurors is not among them.

 Even though bias or prejudice is established in regard to one or more particular jurors out of the panel such is not ground for challenge to the entire array. It appears to be well settled as a general proposition of law that a challenge to the array of jurors goes only to the form and manner of making up the jury panel without regard to the objections to the individual jurors who compose it and must, therefore, be based on some ground affecting the validity of the whole panel or array of jurors. Disqualification of an individual juror in a criminal case for any cause set forth in section 779.5, The Code, is not ground for challenge to the array but should be raised by challenging for cause the prejudiced jurors individually. In support see Government of Virgin Islands v. Williams, 476 F.2d 771, 772 (3 Cir. 1973), citing Frazier v. United States, 335 U.S. 497, 510, 511, 69 S.Ct. 201, 93 L.Ed. 187; United States v. Gordon, 253 F.2d 177 (7 Cir. 1958); State v. Lundgren, 124 Minn. 162, 144 N.W. 752; Smith v. State, 219 Miss. 741, 69 So.2d 837; State v. Taylor, (Mo.1959), 324 S.W.2d 643, 76 A.L.R.2d 671, and the subject of the annotation, 76 A.L.R.2d 678, 679; 47 Am.Jur.2d, Jury, section 229; 50 C.J.S. Juries § 262. Decisions of other jurisdictions recognizing this rule are to be found in the A.L.R. Blue Book Service to this annotation.

 Ordinarily, disqualification of individual jurors for expressions of opinions or for making remarks during selection of the jury indicating in some manner possible prejudice or bias against the accused or the occurrence of circumstances during that procedure from which such bias or prejudice might be implied does not constitute a sufficient ground for a challenge of the entire panel. State v. Taylor, (Mo. 1959), 324 S.W.2d at 648.

In *Taylor* no prejudicial error was found in refusing to grant a mistrial motion following a juror's statement she would be ready to give the defendant "the maximum right now" for what he had done.

Statements by a prospective juror he had talked about the case with the wife of the person to whom the check had been negotiated were not so prejudicial as to fatally infect the entire panel. No abuse of the trial court's discretion appeared in not declaring a mistrial. State v. Turner, 462 S. W.2d 723, 725 (Mo.1971).

In United States v. Wade, 467 F.2d 1226 (8 Cir. 1972), a prosecution for aggravated bank robbery, a prospective juror spoke out during voir dire saying defendant had shot her son. The remark was evidence of another crime. The juror was immediately excused and the panel admonished to disregard her statements. The trial court's denial of a motion for mistrial was affirmed on appeal because no abuse of discretion was shown.

In Stevens v. State, 251 So.2d 565 (Fla. App.1971), the trial court's refusal to disqualify the entire jury panel was upheld when a prospective woman juror asked to be excused because "she had been raped by a colored person the year before" and did not feel she could be impartial in the trial of defendant, a black youth, charged with rape.

In the present case the prospective juror asked the prosecutor if it were true defendant's license was under suspension at the time of the accident. Apparently she had heard a rumor it was suspended and attempted to discover the truth of the matter. As stated, the examination stopped immediately and, after denial of the mistrial motion, the panel was told defendant's license was not suspended at the time of the accident.

Here, the question of the prospective juror was not so prejudicial as to infect the entire panel and deprive defendant of a fair trial.

■ The allowance of a mistrial motion ordinarily rests in the trial court's discretion and its ruling thereon will not be set aside except upon a clear showing of abuse of discretion. The reason for the rule is well stated in Schaefer v. United States, 265 F.2d 750, 753 (8 Cir. 1959), in these words:

"* * * A trial judge is always in the best position to determine whether such an incident as occurred in this case, which it was impossible to anticipate or guard against * * * calls for a mistrial. Only a clear and obvious abuse of a trial court's discretion in refusing a mistrial will justify a reversal of a case by an appellate court upon a cold record. As was said in Goldstein v. United States, 8 Cir., 63 F.2d 609, 613, 'It is impossible to gather from the cold record * * * the atmosphere of the trial itself, the manner in which the words were spoken, or the probable effect, if any, which they had upon the merits of the controversy.'"

This court has enunciated and applied the same reason in somewhat different words in relation to the trial court's discretion in such matters. See State v. Ware, 205 N.W.2d 700, 702 (Iowa 1973) and citations.

We find no abuse of discretion. The authorities cited by defendant are not persuasive. His contention is without merit.

■ II. In support of his second assignment defendant contends, "The Court erred in admitting into evidence the blood sample taken by Dr. Eggers on the basis that it violated the physician-patient privilege of section 622.10, Code of Iowa 1973." In the same assignment defendant makes this concluding statement: "* * * It was error for the Court to allow into evidence the results of the blood test and the testimony of Dr. Eggers * * *."

As indicated, defendant sought to suppress the testimony of both Dr. Eggers and Baughman before commencement of trial. Thus, he seeks not only to suppress the results of the test but also testimony which might provide part of the foundation for admission of the results.

Conceding for the purpose of argument the physician-patient relationship existed between Dr. Eggers and defendant at the time in question the State insists defendant failed to properly preserve the alleged error he now asserts as a basis for reversal by reason of his failure to object to the testimony of Dr. Eggers when offered at trial.

Examination of the reporter's transcript as well as the record filed on appeal discloses that during the direct examination of Dr. Eggers defendant objected at one point to a question put to the doctor relating to a conversation with Mr. Stark as calling for hearsay. At another point defendant objected to a question asked the doctor as to the sanitary condition under which the syringes and needles were kept. No further objections were made.

However, we prefer to rest our determination of this assignment on the decision of this court announced May 22, 1974 in State v. District Court of Iowa and Judge Eads, 218 N.W.2d 641, 644, wherein the court said: "* * * The physician-patient privilege was not designed, nor will it be extended, to act as a shield behind which the patient may take refuge after flunking a chapter 321B blood alcohol test to which he voluntarily assented."

The holding there compels the conclusion defendant's second assignment is without merit.

■ III. Defendant's remaining assignment is based on the contention the evidence was insufficient to generate a jury question as to the issue of defendant's intoxication.

■ On defendant's appeal from criminal conviction based on a jury verdict

challenging the sufficiency of evidence to sustain the verdict this court views the evidence in the light most favorable to the state, including all inferences and presumptions which reasonably flow from the evidence in the record. State v. Ampey, 210 N.W.2d 433, 434 (Iowa 1973). The trial court should submit the cause to the jury and not direct a verdict if there is any substantial evidence reasonably tending to support the charge. State v. Pardock, 215 N.W.2d 344, 346 (Iowa 1974).

In regard to defendant's intoxication Deputy Sheriff Stark testified he smelled the strong odor of alcohol on defendant's breath at the scene minutes after the accident. More importantly, test results showed a blood alcohol content of .254. Concerning the cause of the accident, Mr. Price testified to the collision with defendant's truck. Under the applicable test there was sufficient evidence meriting submission of the cause to the jury. The trial court did not err in denying the motion for directed verdict.

Finding no error the case is therefore— Affirmed.